Bergan, J.
On January 4, 1966, while on a motor patrol, a policeman observed defendant and another man enter, empty-handed, an apartment building at 102 Patchen Avenue, Brooklyn. This was at 12:10 p.m. The patrol continued around the block and came back to the Patchen Avenue address a short time later.
At this time the officer saw defendant and his companion coming out of the building, one carrying a plaid zippered suitcase, the other a plaid plastic shopping bag. The officer followed them until they started to enter a hallway around the corner from the place where they were first seen.
The officer testified: “ At that time * . * * I approached them. I asked the defendant, Bosemond, what did he have in *103 the package. He said he didn’t know. I asked the defendant, Cherry [not involved on this appeal], what was in the luggage he was carrying. He didn’t reply. I questioned them at some length. The defendant, Rosemond, says ‘1 have got it around the block ’. I said, ‘ Take me to it. Take me to the place that you got it from. ’ He led me to the vestibule of 102 Patchen Avenue
On entry into those premises it was found that the door of Apartment 1 on the first floor was open, the lock was removed and the chain was broken. Defendant and his companion were arrested. The owner of the apartment later identified the material found in the bags they had been carrying as belonging to her and taken from the apartment.
Defendant and his companion Cherry were both indicted for burglary, third degree, petit larceny, and receiving and concealing stolen property. A motion was made to suppress the evidence on the ground there had been an unlawful search, which was denied. Defendant thereafter pleaded guilty to attempted burglary in the third degree. The Appellate Division affirmed by a divided court.
One of the questions raised on appeal by appellant is statutory; the other constitutional, i.e., 1 ‘ Whether Section 180-a of the Code of Criminal Procedure authorizes a policeman to stop and question a citizen without any objective basis for suspicion ”; and “ Whether appellant’s Fourth Amendment rights were violated by the police conduct in this case ”.
The provisions of section 180-a of the Code of Criminal Procedure (L. 1964, ch. 86, as amd. by L. 1967, ch. 681) are in terms directed to police inquiry in a particularly prescribed situation and regulate the kind of official action which may be grounded on that specified situation.
The authorized police action is that the officer ‘ ‘ may stop the citizen and “ may demand ” of him certain specific explanatory information.
The situation on which the statute justifies this action is a reasonably grounded suspicion that the citizen is or was committing, or will commit, ‘6 a felony ’ ’ or certain serious misdemeanors.
It is obvious that this statute is not the beginning and the end of the right and duty of police to make inquiries of people on the *104 public streets. Nor does it prescribe the full scope of police activity.
Many subjects, other than the commission of felonies, and many grounds, other than a reasonable suspicion that felony is in budding process, will justify police inquiry.
A statute, such as this one, addressed to a particular situation and designed to give legal justification for specially prescribed procedures ought not to be read to narrow down the normal duty of police to find out by suitable inquiry what is going forward in the public streets. To be alert, aware and knowledgeable of street events would seem the fundamental test of competent and skillful police work.
The normal duty of police inquiry on the street without statutory prescription of grounds or subject matter existed before the enactment of section 180-a (People v. Rivera, 14 N Y 2d 441, cert. den. 379 U. S. 978) and the legal theory of Rivera on the initial general right of police inquiry on the streets was approved in the note to Chief Justice Warren’s opinion in Terry v. Ohio (392 U. S. 1, 11, n. 5).
The right of inquiry upon grounds less compelling than those which would justify an arrest and also on grounds less compelling than those stated in section 180-a as authorizing a demand to answer have been classified as a previously existing common-law basis for police inquiry (People v. Peters, 18 N Y 2d 238; People v. Taggart, 20 N Y 2d 335, 339). This right, pre-existing the statute, continues, and is not impaired by the specifics of section 180-a.
The police can and should find out about unusual situations they see, as well as suspicious ones. It is unwise, and perhaps futile, to codify them or to prescribe them precisely in advance as a rule of law. To a very large extent what is unusual enough to call for inquiry must rest in the professional experience of the police.
But reasonable ground to suspect a felony goes forward should not be the sole criterion on which inquiry may be activated. Nor is inquiry interdicted even though most of what it elicits may be quite innocent.
For example, men carrying a cash register out of a grocery store may very well be taking it out for repair; but they may not; and under conditions of manner and attitude difficult to lay *105 down categorically, police would be quite warranted in finding out by asking questions.
That, or something quite like it, is essentially the basis for the initiation of street questions in this case. The inquiry itself was undoubtedly lawful (see People v. Rivera, supra). The answers to the inquiry afforded solid ground to look further.
Except for the justification for the initial inquiry, however, this case differs from Rivera as, indeed, it differs from Taggart and Peters. There is neither the element of danger here upon which to justify physical action, such as a frisk, nor a sufficiently based suspicion on which to take other action than to ask questions.
The significant fact in this case which distinguishes it from all others which have given trouble to the courts is that here there were only questions asked and no search or detention until the answers themselves gave probable cause.
In the background of what the police had observed immediately before the answers given would have made it perfectly manifest to anyone that a criminal enterprise was afoot.
There is no showing that there was any official compulsion in the street questioning itself. That uniformed police officers were asking questions does not alone make the interrogation coercive. And, of course, there was then no custody (cf. People v. Whitehurst, 25 N Y 2d 389).
Thus the problem in this present case can be divided, as it was in Rivera, in two parts: (a) the reasonableness of the street inquiry; (b) the acts in consequence of the inquiry. It is not the danger to police in response to the questions that arises in this case, but the kind of answer given to the question which justifies further action.
From the moment the defendant Eosemond made the highly suggestive sort of answer that he did not know what he had in the bag he had just carried out of the house, there was reasonable ground to arrest him and his companion at least for larceny, since then the situation became clear and a larceny was probable.
The case is very similar in its facts to People v. Entrialgo (14 N Y 2d 733, affg. 19 A D 2d 609) which was before the enactment of section 180-a and turned on the general duty of police to make street inquiry and where the results of the inquiry justifies further police action.
*106 In all this there has been no violation of appellant’s constitutional rights.
The judgment should be affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Breitel, Jasen and Gibson concur.
Judgment affirmed.