THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. LEONORE EMMA COONS, Appellant.

Third Department, February 25, 1971.

Rapport & Rapport (Thomas J. O'Connor, Sr., of counsel), for appellant.

Roger J. Miner, District Attorney, for respondent.

HERLIHY, P. J. The defendant appeals from a judgment of conviction of murder following a trial by a jury.

The defendant and decedent were husband and wife and on occasions, due to marital troubles, had separated; then recon-

ciled and thereafter again separated. At the time of the shooting on August 24, 1968, they were living apart. The defendant went to the decedent's home ostensibly to take their child for an overnight stay. She was accompanied by her parents, both of whom were described by various witnesses as being intoxicated, and admittedly the defendant had also been drinking. When they arrived at the decedent's home, after some conversation he informed the defendant that she could not take the child because she and her parents, due to their drinking, were not in proper condition. An argument and scuffling ensued between the decedent and the defendant's father and there was testimony that during the course of the argument the defendant was knocked to the ground; that while in that position her mother handed her a revolver and in self-protection, or at least in her defense, she shot and killed her husband. There were other witnesses who testified for the People who described the happening differently.

The defendant first questions the testimony of three State Troopers concerning admissions made to them by the defendant.

There was a " *Huntley* hearing " at which the officers testified, but at which the defendant did not testify. Trooper Conway was the first investigating officer at the scene. He stated that while driving his car he responded to a radio communication which stated that there had been a shooting at the Coons' residence and knowing the location, he proceeded there. He stated that he entered the kitchen of the house, saw the decedent lying on the floor, and while examining the body asked " What happened to him? " In the room at the time were the defendant's mother and father and the defendant replied " I killed him. I killed him. I shot him twice." He testified that he did not give the defendant any warnings as to her rights.

Within a few minutes Trooper Brenzel arrived at the scene. He had no conversation with Trooper Conway concerning what happened, but walked into the kitchen, observed the happenings and inquired " Who did this? " and the defendant stated that she did. He immediately placed her under arrest and advised her as to her rights. The trooper also testified that he heard the defendant make admissions to the doctor when he arrived at the scene.

The court found that the statements made in the presence of the two witnesses, the mother and the father, were voluntary beyond a reasonable doubt and it seems beyond the realm of doubt that such ruling was proper.

Thereafter the defendant was taken to a State Police barracks and was advised by Investigator Potts of the State Police as

to her rights, which the defendant at the time of the trial admitted. He testified that she stated that she did not want her mother and father in any way involved and then made an oral statement as to what happened. She refused to give a written statement and shortly thereafter consulted with an attorney. There was no dispute at the *Huntley* hearing as to these facts and the court found the admissions to have been voluntary and that the defendant had been properly advised of her rights before making such statement. It should be observed at this juncture that while not controlling as to the *Huntley* hearing, the defendant at the time of the trial testified and did not, in substance, dispute any of the facts or circumstances as described by any of the police officers.

At the trial three State troopers testified as to the oral admissions. There was also additional testimony by other witnesses as to the actual shooting, the surrounding circumstances, and all of the essential factual elements of the crime were placed in evidence for the jury's consideration as to the guilt of the defendant beyond a reasonable doubt.

The defendant took the stand in her own behalf and while there was some variance as to the event and the happening thereof just prior to the shooting, at the most, it raised issues for the jury as to her guilt, and if guilty, to what degree of homicide as charged by the court.

It is further contended by the defendant that her right to counsel was violated during her interrogation by Investigator Potts. The officer's testimony that he did not know that LeSawyer (who did not testify) was defendant's attorney until the conclusion of the interrogation was uncontradicted, and there is nothing in the record to indicate that, prior to that time, LeSawyer communicated with the police for the purpose of representing the defendant. Reliance upon *People* v. *Arthur* (22 N Y 2d 325, 329) concerning the limits in police interrogation after an attorney has entered the proceedings is inapplicable. It should be further noted that the Court of Appeals has recently limited the *Arthur* rule to those cases where "there is evidence of conduct  *  *  *  which [indicates] an intention to victimize a defendant or outwit his attorney in order to carry on an inquiry." (See *People* v. *Robles,* 27 N Y 2d 155, 159.)

The court charged the jury as to five possible verdicts: (1) If a reasonable doubt as to the proof, "not guilty"; (2) Not guilty by reason of justification; (3) Guilty of murder as charged; (4) Manslaughter, first degree; (5) Manslaughter, second degree.

The appellant in her brief seeks to raise a nebulous and ambiguous question as to the court's marshalling of the facts in its charge. It would, in this court's opinion, be difficult to envision a more complete and detailed charge; it was comprehensive and a full marshalling of the facts; it was thorough in detail in advising the jury as to the legal requirements necessary to convict as to each of the five possible verdicts and it was, whether read in part or its entirety, explicitly fair and impartial as to the defendant.

A review of the record in its entirety discloses no error which would indicate that the defendant did not receive a fair and impartial trial and the contentions of the appellant are without merit.

The judgment should be affirmed.

REYNOLDS, STALEY, JR., COOKE and SWEENEY, JJ., concur.

Judgment affirmed.