■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM TOWERS, True Name WILLIAM TOWNS, Appellant.—Judgment, Supreme Court, New York County, rendered January 14, 1974, convicting defendant, upon his plea of guilty, of possession of a weapon as a felony, reversed, on the law, the order of said court entered December 5, 1973, denying defendant's motion to suppress physical evidence reversed, on the law, and granted and the indictment dismissed. The central issue on this appeal is the propriety of the "stop" of appellant. Officer Quinlan testified at the suppression hearing that at approximately midnight on the evening in question he was in civilian clothes and exiting from a hotel on 116th Street in Manhattan when he observed appellant standing 25 feet away; and noticed "a bulge right in front under his jacket." Defendant then allegedly "turned around and started walking in the opposite direction." Officer Quinlan and his partner then entered their unmarked car, made a U-turn, and followed appellant, who was seen "making an adjusting motion with his hands in his pocket [and] looking over his right shoulder * * * several times." On essentially these facts defendant was stopped; and a .38 caliber pistol eventually recovered after a frisk. On the record before us, we find the initial stop to have been unjustified. *(Terry v Ohio,* 392 US 1; *People v Cantor,* 36 NY2d 106.) The mere fact that appellant walked away rapidly and looked over his shoulder several times, after noticing two unidentifiable strangers following him at midnight, is not sufficient, in our view, to raise Officer Quinlan's hunch to the level of reasonable suspicion. (CPL 140.50; *People v Johnson,* 30 NY2d 929; *People v Batino,* 48 AD2d 619; *People v Derrick,* 48 AD2d 620.) Concur—Stevens, P. J., Murphy and Capozzoli, JJ.; Lupiano and Nunez, JJ., dissent in the following memorandum by Nunez, J. I would affirm the judgment of conviction. At the suppression hearing Police Officer Quinlan testified that at about midnight, in a high crime "sensitive" area of Manhattan, while on plainclothes duty with a fellow officer, he first saw defendant standing on the sidewalk about 25 feet away from him. The officer noticed a bulge under the front of defendant's jacket and pointed this out to his partner, Officer Walton. The defendant looked at Officer Quinlan for a moment and then quickly walked away. Both officers followed in an unmarked car for a few minutes, observing defendant who repeatedly looked back over his shoulder, shifted or adjusted something in his waistband jacket and increased his pace. The officers stopped their car near defendant and Officer Quinlan exited, immediately identified himself as a police officer and ordered the defendant to stop. Defendant continued to walk away, at which point the officer told him to "hold it", whereupon defendant turned toward the officer, produced a .38 caliber loaded revolver and pointed it directly at him. Officer Quinlan then drew his own gun and commanded the defendant not to move. Defendant then replaced his gun inside his jacket. Officer Walton searched the defendant and removed defendant's gun and a holster from inside his jacket. Officer Walton, the only other witness to testify at the hearing, confirmed the material facts as related by his

partner. The record amply justifies the trial court's findings that Officer Quinlan, on the force for six years and a member of the city crime unit with street crime experience and involved in numerous handgun arrests, acted with reasonable caution and had probable cause to follow and eventually stop defendant, and that the subsequent seizure of defendant's gun was not in contravention of his rights. Based on his observations, considered in light of the facts herein, and with the expertise attendant to his years of experience, together with the practical considerations of everyday life in the City of New York, Officer Quinlan acted prudently and with probable cause; likewise Officer Walton, hearing his partner give a warning and acting with reasonable dispatch in the justified belief that a crime was being committed, had ample justification for his subsequent search and the seizure of defendant's loaded gun. The procedures followed by these two officers and the steps taken by them meet the practical demands of effective criminal investigation and prevention and were not unreasonable. *(People v Rivera,* 14 NY2d 441.) The trial court found, on credible evidence, that the defendant was searched only *after* the police officer saw defendant point a gun at him. This record calls for an affirmance. We should not frustrate excellent police work by a hypertechnical analysis of what occurred on this midnight in search for error to justify freeing a defendant who is and, indeed, has pled guilty to possession of a loaded weapon.