■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WALLACE KING, Appellant.—Judgment, Supreme Court, New York County, rendered June 14, 1974 convicting defendant upon a plea of guilty of possession of a weapon as a felony reversed, on the law; the order of Supreme Court entered March 14, 1974, denying defendant's motion to suppress certain physical evidence reversed, on the law, the motion granted and the indictment dismissed. Prior to entry of the plea defendant moved to suppress certain physical evidence which had been seized from him at the time of his arrest. The motion was denied after a hearing. At the suppression hearing Patrolman Meyer testified that while he and his partner were on plainclothes duty at the St. Nicholas public housing project, they observed a group of people, and that after approximately 15 minutes the defendant left that group and entered the lobby of a nearby building. The officers walked to within 10 or 15 feet of the building and saw defendant emerge about three minutes later. Defendant then rejoined the group and 10 to 15 minutes later he entered the lobby of another building and also exited after several minutes. At that time the patrolmen approached defendant to inquire as to why he was entering and leaving buildings in the area. As they approached, Patrolman Meyer noticed a bulge—about 1½ inches thick —sticking out of defendant's front waistband. The officer identified himself and placed his hand on the bulge which "felt like the handle of a revolver." Defendant was then taken to the lobby of a nearby building and was found to be in possession of a gun and 19 glassine envelopes containing heroin. We find that the frisk was unlawful and that the motion to suppress should have been granted. There was no basis to stop the defendant, either pursuant to the authority of CPL 140.50 or pursuant to the common-law power of the police to inquire into "unusual street action". *(People v Rivera,* 14 NY2d 441, 444.) Defendant's actions were not such as to provide a reasonable basis to suspect that he was committing, had committed or was about to commit a crime. Nor were his actions unusual or suspicious to the extent that police inquiry was justified. Defendant was merely observed in conversation with a group of people, during midafternoon, outside a housing project. The fact that during a 40-minute period he was seen entering two buildings and exiting within a short time does not indicate criminal activity. Moreover, defendant's behavior was not furtive and he made no attempt to flee when he learned the officer's identity (see *People v White,* 16 NY2d

270). Nor did the observance of a bulge justify the subsequent frisk. A bulge, whether in one's pocket *(People v Batino,* 48 AD2d 619) or in one's waistband *(People v Lewis,* 49 AD2d 558) is insufficient in and of itself to justify a frisk. Concur—Stevens, P. J., Tilzer and Lane, JJ.; Markewich and Nunez, JJ., dissent in the following memorandum by Nunez, J.: I would affirm. Housing Patrolman Carl Meyer, on plainclothes duty, observed the defendant enter a building in the St. Nicholas Housing Authority project; defendant came out of the building three minutes later and talked to a group of friends for 15 minutes, whereupon he entered another building lobby, again exiting after a few minutes. At that point Meyer decided to question the defendant to find out why he was entering in and coming out of these buildings which had a serious history of robberies and drug transactions. This policeman was discharging his duty to conduct an inquiry of defendant's behavior on the basis of his observations. Such power to inquire is indispensable to proper law enforcement. *(People v Rivera,* 14 NY2d 441, 444.)* It has been held that "To a very large extent what is unusual enough to call for inquiry must rest in the professional experience of the police" and that "To be alert, aware and knowledgeable of street events would seem the fundamental test of competent and skillful police work." *(People v Rosemond,* 26 NY2d 101, 104.) As he approached the defendant solely for the purpose of questioning him, the police officer noted a bulge sticking out of the defendant's front right waistband. Upon reaching the defendant, Meyer identified himself as a police officer and touched the bulge which "felt like the handle of a revolver." The search followed and a loaded revolver was removed from defendant's waistband. Under these uncontradicted circumstances, the policeman's conduct was justified. The defendant drew the patrolman's attention to him by his quick entry into and exit out of the two buildings. It was reasonable for the officer to approach the defendant to ascertain, at the very minimum, whether defendant lived in the project or what he was doing there. The bulge that was observed in defendant's waistband left little doubt in Meyer's mind that defendant was carrying a weapon. In making this street inquiry he had the right to frisk the defendant for self-protection—otherwise the "answer to the question propounded * * * may be a bullet". *(People v Rivera,* 14 NY2d 441, 446.) A bulge in a pocket may be equivocal in the message it communicates; a bulge in a waistband, easily palpable and more revealing, is a certain invitation to further exploration without any real violation of the person. Once again excellent police work is being frustrated by a hypertechnical analysis in search for error to justify freeing a defendant who is and, indeed, has pled guilty to possession of a loaded weapon.