Florence M. Kelley, J.
The principal issue on this motion is whether a police officer may briefly detain a person on the basis of information that another officer seeks to question the person about a recent homicide. The arresting officer in the present case received such information about two of the defendants and undertook to detain them. His actions resulted in the discovery of a loaded revolver on the floor of a vehicle in which all four defendants had been sitting. Indicted for criminal possession of a weapon in the third degree (Penal Law, § 265.02, subd [4]; § 265.15, subd 3), the defendants seek suppression of the gun.
The circumstances which led to the defendants’ arrests, as established by the credible evidence at the suppression hearing, were as follows:
In the early hours of September 27, 1975, police officer Anthony Grant was on foot patrol on the Upper West Side of Manhattan. At approximately 1:00 a.m., he observed an automobile occupied by the defendants standing in a crosswalk at Broadway and 107th Street. Intending to issue a summons for *157 blocking the crosswalk, the officer approached the vehicle and asked the driver, the defendant Cortes, for his license and the car’s registration. Cortes gave the officer the registration but not his license, stating that he didn’t have it with him. The officer then told Cortes to turn off the engine and step out of the car.
Moments later, while Cortes was standing next to the vehicle, a man (hereinafter referred to as the "informant”*) approached the officer. Pointing to Cortes and to the defendant Ferreira, who was sitting in the back of the car, the informant stated that both men were being sought for questioning by a homicide detective about a fatal shooting in the area one or two days earlier, the victim of which was the informant’s friend. In connection with this statement, the informant produced a printed business card bearing the detective’s name and his homicide command. On the back of the card was a handwritten number which, according to the informant, was the case number assigned to the investigation.
The informant’s bearing was a mixture of anger and agitation. His behavior toward Ferreira in particular revealed a strong belief that Ferreira was involved in his friend’s death. He even suggested to the officer that Ferreira might be armed. At no time, however, did the informant state that he had witnessed the homicide or that he had seen a gun in the hands of any of the defendants. When asked by the officer to identify himself, the informant wrote his name and address on a piece of paper.
After speaking with the informant, the officer told Ferreira to step out of the automobile. As Ferreira emerged, the officer shone a flashlight into the rear of the car and observed a gun on the floor. He immediately seized the weapon and placed the defendants under arrest.
The first question of law raised upon these facts is whether the officer acted lawfully when he directed the defendant Cortes to produce his license and registration. In People v Ingle (36 NY2d 413), it was held that a police officer may stop a vehicle for a "routine traffic check” whenever he has a reasonable basis for suspecting a violation of the Vehicle and Traffic Law. It necessarily follows that police officer Grant acted lawfully in the present case since he actually observed *158 such a violation, albeit a minor one (Vehicle and Traffic Law, § 1202, subd [a], par 1, cl d [stopping in a crosswalk]). When Cortes failed to produce an operator’s license, the officer acquired grounds to charge him with an additional infraction, this one more serious than the crosswalk violation (Vehicle and Traffic Law, § 509, subd 1 [unlicensed operator]).
A second issue concerning the defendant Cortes is whether the officer acted lawfully in directing him to step out of the vehicle. In this connection, it must be noted that a police officer is empowered to arrest a person for any traffic infraction committed in the officer’s presence (CPL 140.10, subd 1, par [a]; Vehicle and Traffic Law, § 155), even though the courts have expressed a preference for the use of an appearance ticket in such situations (e.g., People v Copeland, 82 Misc 2d 12). Since Cortes was subject to arrest, the officer was entitled to take reasonable measures to insure that he would remain at the scene until he was either taken into custody or given a summons. In addition, directing Cortes to stand outside the vehicle constituted no greater intrusion upon his privacy or freedom of movement than did the initial stop (cf. People v Perel, 34 NY2d 462), especially since the officer made no attempt at this time either to frisk Cortes or to search the vehicle. Accordingly, the court finds that the detention of Cortes outside the vehicle was proper.
It is evident from the foregoing analysis that none of the facts which supported the brief detention of Cortes provided any grounds for detaining Ferreira. The sole basis for the officer’s decision to detain that defendant was the information conveyed by the informant. Since the gun came into view only after Ferreira stepped out of the car, the court must determine if such information was sufficient to justify the officer’s actions with respect to Ferreira.
The right of a police officer to arrest or otherwise detain a person in the absence of a warrant derives from three sources, two of which are codified. CPL 140.10 (subd 1, par [b]) permits a police officer to arrest a person upon reasonable cause to believe that the person has committed a crime. Where the officer lacks probable cause but does have a reasonable suspicion that a person has committed, is committing or is about to commit a crime, CPL 140.50 permits him to stop and question such person. Both statutes apply only to situations in which police officers encounter persons who are suspected of criminal activity. Neither statute has any application to the present *159 case, since nothing the informant said provided probable cause to arrest Ferreira or even reasonable grounds to suspect him of having committed a crime.
The third source of a police officer’s power to detain persons without a warrant is his general authority, derived from common law, to investigate criminal activity (People v Rosemond, 26 NY2d 101; People v Rivera, 14 NY2d 441, cert den 379 US 978). Unlike the statutory powers discussed above, the exercise of this right of inquiry is not limited to those situations in which an officer seeks to arrest or question a specific suspect. There are countless other situations in which police have legitimate need to stop and question persons. Perhaps the most common of these is the investigation of a past crime. In such a situation, the existence of criminal activity is not merely'suspected; it is established. And the purpose of such investigation is not the detection of crime, but the apprehension of the criminal.
Recognizing that interrogation of witnesses is indispensable to effective investigation, courts have consistently acknowledged the general right of police officers to put questions to persons who may possess information about a particular crime (Miranda v Arizona, 384 US 436, 477-478; People v Coons, 36 AD2d 116, affd 31 NY2d 800). By necessary implication, it follows that the power to inquire also includes the power to detain, at least for a period of time sufficient to ascertain whether the person does have knowledge of the particular crime under investigation and whether he is willing to answer questions. On the other hand, this power to investigate may not be used as a pretext for stopping persons whom the police have no basis for questioning (People v Cantor, 36 NY2d 106).
Applying these principles to the present case, the court finds that police officer Grant’s detention of Ferreira was a legitimate exercise of his common-law authority to investigate crime. The informant furnished the officer with detailed information about a recent homicide and the ensuing investigation. His possession of the business card was evidence that a homicide detective regarded him as a source of information about the case and contemplated further communication with him. Additional indications of the informant’s reliability in this instance were the fact that he readily identified himself and the fact that he was subject to arrest for falsely reporting an incident if his information were not true. In light of all these circumstances, the officer had a reasonable basis to *160 believe that Ferreira and Cortes were being sought for questioning by a detective concerning a specific homicide. Since the detective would have had the right to stop and question both men, police officer Grant unquestionably had the right to detain them, at least long enough to enable the homicide detective, or a colleague with knowledge of the case, to reach the scene.
The next issue is whether the officer acted properly in directing Ferreira to step out of the vehicle. As in the case of Cortes, once Ferreira was legally detained, it was immaterial whether he was directed to remain sitting in the vehicle or directed to stand near it; neither alternative was more intrusive upon Ferreira’s freedom than the other (cf. People v Perel, 34 NY2d 462, supra). It should also be noted that the officer did not use Ferreira’s departure from the vehicle as an occasion to frisk him.
The final issue is whether police officer Grant acted unlawfully in shining his flashlight into the rear of the vehicle. Provided that an officer is standing in a place where he has a legal right to be, his act of shining a flashlight into an automobile does not constitute a search within the meaning of the Fourth Amendment, and any contraband revealed by the beam of light may be lawfully seized (People v Hoffman, 24 AD2d 497; People v Anthony, 21 AD2d 666). Since police officer Grant was standing on a public street when his flashlight beam revealed the gun in the defendants’ car, his seizure of the weapon was valid.
For the foregoing reasons, the motion to suppress is denied in all respects.

 Although the informant did not testify at the hearing, his identity was disclosed to defense counsel and his existence is not in dispute.