■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RODEL

GRANT, Respondent.—Appeal by the People from an order of the Supreme Court, Kings County, dated September 10, 1975, which granted defendant's motion to suppress certain physical evidence (one revolver and two packets of heroin). Order reversed, on the law and the facts, and motion denied. Officer Ippolito, while on patrol, observed a woman who had an outstanding bench warrant against her. The woman fled into a social club, and Ippolito, after radioing for help, entered the club with his partner. Upon entering, Ippolito ordered the 15 people present to stand still. He observed what appeared to him to be the outline of a gun in the defendant's pocket. When the defendant reached his hand partially into his pocket, Officer Ippolito drew his gun, ordered defendant to freeze, and placed his hand in defendant's pocket. He withdrew a gun. Defendant was arrested, and a search incident to the arrest turned up two packets of heroin. The evidence seized should not have been suppressed. When defendant put his hand in his pocket, after the officer had seen what he believed to be the outline of a gun in that very pocket, he was justified in believing that he was in danger of physical injury. His response was reasonable under the circumstances, and the evidence was properly seized (cf. *Terry v Ohio,* 392 US 1; CPL 140.50, subd 3). The cases relied upon in the dissenting memorandum are distinguishable on their facts. Rabin, Shapiro and Titone, JJ., concur; Hopkins, Acting P. J., dissents and votes to affirm, with the following memorandum, in which Martuscello, J., concurs: It is quite clear that the officers, in pursuing the woman named in the bench warrant into the social club, could not stop and frisk all of its occupants, since that action would constitute a general search in violation of the Fourth Amendment (cf. *People v Sanchez,* 38 NY2d 72; *Davis v Mississippi,* 394 US 721). Criminal Term, on the suppression hearing, found that the officers were not in fear of their lives in entering the club; nor had they any reason to be in fear. Moreover, Criminal Term found that the bulge in the defendant's pocket observed by one of the officers was not sufficient to justify the search which produced the defendant's gun. Hence, we must distinguish cases such as *Adams v Williams* (407 US 143), where a search was held to be warranted by previous information known to the officer, leading to his belief that the person searched possessed a gun. The observations by a police officer of a bulge in the pocket *(People v King,* 50 AD2d 521; *People v Graves,* 49 AD2d 844; *People v Lewis,* 49 AD2d 558), even one having the appearance of a " 'cylinder type shape' " *(People v Batino,* 48 AD2d 619), or one appearing like the shape of a gun *(People v Goings,* 51 AD2d 901), have been held not sufficient to permit a frisk or search. And in *People v Towers* (49 AD2d 839) it was held that an officer was not justified in halting the defendant because of the observation of a bulge in the defendant's dress, even though that action was followed by the defendant's production of the gun and the pointing of it toward the officer. I do not cite these cases because they fit precisely the appeal before us, since our case must stand on its own facts. I cite them, rather, because they illustrate what seems to be a growing tendency by the police to make searches merely on the ground that a bulge is seen in the pocket of someone who is otherwise not engaging in suspicious conduct. This tendency, carried to a logical conclusion, would warrant the search of many individuals. I do not believe we can sanction such a wholesale practice, even though in some instances the search might indeed uncover a weapon or other contraband. For this reason, and based on the factual findings made by Criminal Term, I vote to affirm.