■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LENEL HUTCHINSON, Respondent.—Order of the Supreme Court, Bronx County, rendered March 11, 1977, granting defendant's motion to suppress evidence, reversed, on the law, and defendant's motion to suppress evidence is denied. While in a high crime area at 5:30 P.M. on March 14, 1976, the arresting officer, in uniform in a marked patrol car with his partner, observed defendant and another male (also subsequently arrested) running from the vicinity of Nelson Avenue and Edward L. Grant Highway. Defendant and his companion ran into the middle of the street, waving frantically, moving from one side of the street to the other, continually looking behind them, seeking to stop any moving vehicle. They succeeded in hailing a "gypsy" cab, which halted and picked them up. From the cab defendant and his companion kept looking back at the patrol car as it followed the cab. The patrol car signaled the cab to stop and as the cab was pulling over to the side, defendant's companion attempted to get out before the cab came to a halt. Defendant also tried to do so but the door on his side was jammed. As the cab stopped, defendant removed his coat and threw it towards the opposite door, from which his companion had just exited. Most of the coat landed outside the cab, into the street, a small part remaining on the seat. The police officer and his partner by then emerged from the patrol car to question defendant and his companion. The officers' guns were not drawn. The arresting officer asked the men whether anything was the matter, to which defendant's companion responded, "I didn't do nothing. We didn't do nothing." Defendant did not answer. The officer picked up the coat, felt it was heavy on one side, frisked it and upon feeling "a metal object that felt like a gun", retrieved the weapon. There were "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]" the action of the police officers in stopping the cab (see *Terry v Ohio*, 392 US 1, 21). The police officers' suspicion was initially aroused by the unusual behavior of defendant and his companion in a high crime area, appearing as if they were running away from some person or situation *(People v Rosemond*, 26 NY2d 101, 104; *People v Rivera*, 14 NY2d 441, 446, cert den 379 US 978). To the trained observer, there is a difference between standing still and hailing a cab on the one hand, and running into the street rushing from one side to the other endeavoring to stop a vehicle while looking back. The police officers' suspicions were heightened by their observations of defendant and his companion in the cab as the officers were following it in the patrol car. Defendant and his companion kept looking back through the cab window. As the patrol car came close and the cab began pulling over to the side to halt, defendant and his companion tried to leave the cab while it was still moving. When defendant found himself unable to get out because he could not open the door on his side and as the police officer was approaching, defendant took off his coat and sought to throw it out of the cab. Based upon their observations, the officers in light of their expertise, possessed reasonable, founded suspicion *(People v De Bour*,

40 NY2d 210, 223) that criminal activity was afoot. Accordingly, the stop to inquire was justified. There is no rule that once a person enters a cab he becomes insulated from a reasonable stop by the police or that the police are held to a higher standard than reasonableness to justify the stop (see *People v De Bour, supra,* p 224). The officers were not mandated to disregard the actions of defendant and his companion which occurred prior to entering the cab or any right of inquiry provoked by such actions, especially when the conduct of defendant and his companion while in the cab added to the officers' suspicion. Such actions deserved policy inquiry and justified the consequent stop. The trial court's reliance upon *People v Ingle* (36 NY2d 413) was misplaced. In *Ingle,* the vehicle was arbitrarily stopped for a purported "routine traffic check"; the police officer had no reasonable suspicion of a violation of law. Here, the stop was not routine. It was justified by reasonable suspicion of criminal activity. Furthermore, the officers had observed the "gypsy" cab pick up a "hailing" passenger (defendant and his companion) which is, in itself, a violation of law (Administrative Code of City of New York, § 2304). Defendant, having discarded his coat voluntarily, could no longer assert any expectation of privacy therein. Accordingly, the police officer had the right to pick up the coat, ascertain its contents and retrieve the weapon therefrom. *(People v Speller,* 14 NY2d 514, 515; *People v Pittman,* 14 NY2d 885; *People v Caravella,* 35 AD2d 698). Concur—Lupiano, Birns and Lane, JJ.; Murphy, P. J., dissents and would affirm on the opinion of Zimmerman, J.