■ The People of the State of New York, Respondent, v Gregory Wheeler, Appellant.—Judgment, Supreme Court, Bronx County, rendered on March 5, 1976, convicting the defendant, upon his plea of guilty, of robbery in the first degree, affirmed. In our view the police did not exceed their authority in making inquiry of the defendant when they saw him coming out of an apartment house in a high crime area carrying a television set and immediately hail a gypsy cab and hurriedly enter. When he responded to the police officers' initial inquiry with what the police knew, of their own knowledge and observation, was a lie, they were entitled to take further action to hold him briefly until they could ascertain whether a crime had been committed. Immediately thereafter, the officers' suspicion was justifiably heightened to a great extent upon hearing a broadcast on the police radio that a burglary was in progress in the building from which defendant had emerged. Upon a brief investigation, the officers learned that one of the residents of the building had just been robbed by an individual, described to them by the victim, as practically identical to defendant. Defendant was then promptly placed under arrest. Further, the television set sought to be suppressed did not come to the attention of the police as a result of an illegal search, as defendant carried it on a public street in plain view. Defendant was merely deprived of a chance to make a speedy getaway, a "right" which is not entitled to any weight in the balance we strike

between the power of the police to make reasonable inquiry and the right of citizens to be protected from unwarranted intrusions in their daily activities. All Concur—Kupferman, Lupiano and Silverman, JJ.; Murphy, P. J., who dissents in the following memorandum: At about 11:55 A.M. on June 3, 1975, three officers in an anticrime squad were driving in a police "yellow cab" (police vehicle) on the southbound service road of the Grand Concourse. Officer Munera, the driver, saw the defendant, a Black man, exit the building located at 1299 Grand Concourse with a television set in hand. Munera became suspicious since he knew that the residents of this building were predominately white. The officers observed the defendant enter a gypsy cab with the television set. Munera immediately blocked the movement of the gypsy cab with the police vehicle. After Munera identified himself as a police officer, he asked the defendant where he had obtained the televison set. The defendant responded that he had paid a "Puerto Rican" to help him carry the set from Grant Avenue to the Grand Concourse. At that juncture, accepting Munera's testimony at the suppression hearing, the officer knew that the defendant was lying, for he had been seen exiting subject building. The police relieved the defendant of the television set and they placed it in the trunk of the police vehicle. As the defendant was being escorted into the police vehicle, a radio run was received that a burglary had taken place at 1299 Grand Concourse. In response to this radio broadcast, the officers soon ascertained that an elderly resident of the building had been assaulted and robbed of a television set by a Black man of defendant's description. At that point in time, the defendant was arrested. Before a person may be stopped in a public place, a police officer must have reasonable suspicion that such person is committing, has committed, or is about to commit a crime *(People v Cantor,* 36 NY2d 106, 112; CPL 140.50). The common-law power to inquire does not include the right to seize unlawfully. The minimum requirement for a lawful detentive stop is a founded suspicion that criminal activity is afoot *(People v Cantor, supra,* p 114). The police have no valid reason to suspect that an individual is engaging in criminal activity solely because he enters and exits a building several times in a high crime area. *(People v King,* 50 AD2d 521.)* Thus, the officers in this proceeding had no right to stop and question this defendant because he was seen leaving a particular building. Surely, it cannot be considered a suspicious occurrence for a Black man to exit, at noontime, a building populated by a number of Black residents. Furthermore, it has been held that the police do not have the right to stop an individual for merely holding such everyday items as a purse *(People v Davis,* 36 NY2d 280; *People v Lakin,* 21 AD2d 902) or a book *(People v Anonymous,* 48 Misc 2d 713). The television set, seized in this proceeding, was no more suspicious and should have raised no greater curiosity on the part of the police. A citation is hardly necessary to support the proposition that it is not suspicious, but quite common, for a Black man to enter a gypsy cab in a high crime neighborhood. Viewed upon the whole, the defendant's conduct was quite innocent. Under both CPL 140.50, and the common law, the police had no reasonable basis for suspecting that the defendant was engaged in any criminal activity. Since the initial stop of the defendant was unlawful, the evidence thereafter acquired must be suppressed. The judgment of conviction should be reversed, the plea of guilty vacated, the motion to suppress granted and this matter remitted to the Supreme Court for further proceedings not inconsistent herewith.