THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLARENCE MOORE, Appellant.

First Department, April 18, 1978

**APPEARANCES OF COUNSEL**

*Gerald Zuckerman* for appellant.

*Mark Dwyer* of counsel *(Robert M. Pitler* with him on the

brief; *Robert M. Morgenthau, District Attorney),* for respondent.

## OPINION OF THE COURT

MURPHY, P. J.

At about 7:40 P.M. on January 22, 1976, a detective and a police officer, dressed in civilian clothes, were on anticrime patrol in an unmarked vehicle in the area of 149th Street and Eighth Avenue in Manhattan. They observed a Black male, the defendant, walking down the street with a sack over his shoulder. The defendant was covered with snow and he walked at a quick pace with a noticeable limp. Since the detective could see what "looked like" the outline of a television set in the sack, the decision was made to stop and question the defendant.

After identifying themselves, the detective and officer asked the defendant from where he had come and what was in the sack. The defendant replied that he was coming from a friend's house; he further responded that the sack contained a television set and a fur coat. In answer to a question of the detective, the defendant stated that the television was a Sony. Upon the detective's request, the defendant then permitted him to inspect the contents of the sack. Thereupon, it was discovered that the television was a General Electric. The defendant was taken to the station house where he was charged with possession of stolen property that included the television set, a fur coat, two watches and a ring. When a screwdriver was discovered during a subsequent search of his person, defendant was also charged with possession of burglar's tools. The defendant later pleaded guilty to burglary in the third degree.

■ ■ This court is again faced with a basic question of whether a Black man may carry a television set, be it exposed or covered in a sack, in a public street. *(People v Wheeler,* 61 AD2d 737.)* The minimum requirement for a lawful detentive stop is a founded suspicion that criminal activity is afoot. *(People v Cantor,* 36 NY2d 106, 114.)* Clearly, the officers had no founded suspicion to believe that the defendant was or had engaged in criminal conduct merely because he was (i) Black, (ii) walking at a quick pace with a limp, (iii) covered with snow, (iv) in a high crime area at night. None of the foregoing factual elements, whether considered alone or in combination, portend criminal activity of any kind.

Therefore, it must be concluded that the defendant was stopped because the detective saw what "looked like" the outline of a television set in his sack. The Court of Appeals has held that the police do not have the right to stop an individual merely because he is carrying a purse *(People v Davis,* 36 NY2d 280). It follows, by analogy and extension, that the police should not be clothed with the authority to stop an individual merely because he is carrying a sack.

It is entirely irrelevant that the detective in this proceeding "happened" to be correct in his observation that the sack contained a television set rather than another object of similar size and shape. Even though most police officers are trained observers, it is quite difficult for even the most experienced officer to divine the contents of a particular sack. An individual's right to walk the public streets without fear and annoyance should not be circumscribed by permitting the police to stop and interrogate him on the basis of a "hunch", that will be wrong as often as it is correct.

Viewed upon the whole, the defendant's conduct was quite innocent. Since the detentive stop was unlawful, the judgment of the Supreme Court (DENZER, J., at suppression motion; LEFF, J., at plea and sentence), rendered November 9, 1976, should be reversed, on the law, the plea vacated, the motion to suppress granted and the indictment dismissed.

SILVERMAN, J. (dissenting). I would affirm the judgment of conviction. I think the motion to suppress was properly denied.

I think the applicable guidelines were laid down by the Court of Appeals in *People v De Bour; People v La Pene* (40 NY2d 210, 223, 225):

"We bear in mind that any inquiry into the propriety of police conduct must weigh the interference it entails against the precipitating and attending conditions. By this approach various intensities of police action are justifiable as the precipitating and attendant factors increase in weight and competence. The minimal intrusion of approaching to request information is permissible when there is some objective credible reason for that interference not necessarily indicative of criminality *(People v De Bour, supra).* The next degree, the common-law right to inquire, is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a policeman is entitled to interfere with a

citizen to the extent necessary to gain explanatory information, but short of a forcible seizure *(People v Cantor,* 36 NY2d, at p 114; *People v Rosemond,* 26 NY2d 101; *People v Rivera,* 14 NY2d 441, 446, and authorities cited therein). Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person (CPL 140.50, subd 1; see *Terry v Ohio,* 392 US 1; *People v Cantor, supra). * * *

"We are cognizant of the fact that police-citizen encounters are dynamic situations during which the degree of belief possessed at the point of inception may blossom by virtue of responses or other matters which authorize and indeed require additional action as the scenario unfolds."

I think that this is indeed a case in which the degree of belief possessed at the point of inception blossomed as the scenario unfolded.

As Justice DENZER in his decision on the suppression hearing said:

"First, the question that arises in this matter is whether the officer had reasonable cause to stop the Defendant and question him. A number of factors combine to be of considerable significance on that subject.

"This was a very snowy night according to the evidence, there was an inch of snow on the ground. It was seven thirty in the evening. The Defendant was covered with snow and at the time apparently no one else was on the street.

"He, the Defendant, had a fairly serious cut it seems on his left temple, at least serious enough for him to receive hospital treatment for it.

"He was limping and carrying a pillowcase within which according to the officer, one could see the outline of a television set."

Surely this comes within the statement of Judge WACHTLER in the *De Bour* case *(supra,* p 223): "The minimal intrusion of approaching to request information is permissible when there is some objective credible reason for that interference not necessarily indicative of criminality".

As the Court of Appeals said in *People v Rosemond* (26 NY2d 101, 104-105):

"But reasonable ground to suspect a felony goes forward should not be the sole criterion on which inquiry may be

activated. Nor is inquiry interdicted even though most of what it elicits may be quite innocent.

"For example, men carrying a cash register out of a grocery store may very well be taking it out for repair; but they may not; and under conditions of manner and attitude difficult to lay down categorically, police would be quite warranted in finding out by asking questions.

"That, or something quite like it, is essentially the basis for the initiation of street questions in this case. The inquiry itself was undoubtedly lawful (see *People v. Rivera, supra)*. The answers to the inquiry afforded solid ground to look further."

The scenario unfolded. As Judge DENZER found: "The questioning was also quite reasonable. The Defendant was asked where he was coming from, and he replied he had been visiting a friend at 148th Street, but when asked to be more specific about that, he gave no answer. He was asked what was in the bag, and he stated that there was a television set and a fur coat." Surely any police officer worthy of his salt would have his suspicions aroused by being told that on the streets of New York a man was carrying a television set and a fur coat in a pillowcase, an extraordinary combination of objects in an extraordinary container. I think the situation had now reached what Judge WACHTLER called in the *De Bour* case, the next degree. "The next degree, the common-law right to inquire, is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure". *(People v De Bour,* 40 NY2d, at p 223.)

The questioning continued. Judge DENZER found:

"When the Defendant was asked by the officer if the latter could look into the bag, the Defendant answered in the affirmative and opened the bag, to allow the officer a view of the contents.

"The contents were also quite significant, the televison set inside was of a different make than that that the Defendant had designated during the interrogation by the officer. The bag contained jewelry and watches and other items of which the Defendant had not mentioned."

A television set, a fur coat and jewelry carried in a pillowcase on the streets of New York! And the person carrying it

thinks the television set is a Sony when it is in fact a General Electric. By this time, the officer was surely at the next degree. "Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person". *(People v De Bour,* 40 NY2d, at p 223.)

As Judge DENZER said:

"All this, together with the fact that the Defendant could not or did not explain where he got the merchandise, provided ample reasonable cause for the officer to take him into custody and make an arrest at that point.

"Whether the actual owners could be identified at that time, is completely immaterial. One does not have to prove beyond a reasonable doubt every element of a crime in order to have reasonable cause to make an arrest. The combined facts in this case, in my opinion, clearly added up to reasonable cause. The salient flavor of the case, throughout, seems to me the reasonableness of the police officer's action. Everything he did in this case would seem reasonable to any person impartially viewing the conduct of the police officer."

To the surprise of absolutely no one, it was later ascertained that the defendant's unusual load was the loot from a burglary of an apartment in the immediate neighborhood that had taken place shortly before the encounter with the police.

EVANS, FEIN and MARKEWICH, JJ., concur with MURPHY, P. J.; SILVERMAN, J., dissents in an opinion.

Judgment, Supreme Court, New York County, rendered on November 9, 1976, reversed, on the law, the plea vacated, the motion to suppress granted and the indictment dismissed.