THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BOBBY RAY, Appellant.

First Department, June 20, 1978

### APPEARANCES OF COUNSEL

*Gilbert A. Samberg* of counsel *(Le Boeuf, Lamb, Leiby & MacRae,* attorneys), for appellant.

*Phyllis M. Gershon* of counsel *(Robert M. Pitler* with her on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

### OPINION OF THE COURT

BIRNS, J.

On this appeal defendant claims he was the subject of unlawful police detention, search and seizure, in violation of our State statutes (CPL 140.50 *et seq.)* and that his rights under the Fourth and Fourteenth Amendments were violated. He seeks, on that basis, to suppress certain physical evidence and oral statements obtained from him by the police.

Shortly after midday on February 18, 1976, two police officers, Sergeant Mancuso and Patrolman San Filippo, on anticrime patrol in civilian clothes in the vicinity of a targeted high crime area, observed defendant and his companion walking together on East 7th Street. Officer San Filippo believed they fit a profile of criminal suspects working in the area. The officers, in an undercover taxicab, followed defendant and his companion and observed them enter 61 East 7th Street without any difficulty. The officers attempted to do likewise but could not as they found the vestibule door to the building locked. When the superintendent emerged after they rang her bell, they identified themselves to her as police officers and inquired whether she had seen defendant and his companion, whom they described, enter the building. She replied in the negative and stated there was no one like that living in the building. Upon returning to their parked vehicle across the street, the officers continued their vigil.

About 10 to 15 minutes after defendant and his companion entered the building, the officers saw defendant and his companion emerge, the former carrying a televison set and the latter an antenna. Sergeant Mancuso followed defendant and his companion and as the sergeant was walking past a store across the street from the premises, where the superintendent had by then gone shopping, he heard her say to some people that the two men, referring to defendant and his companion, who had just left the building, did not live there. Sergeant Mancuso then asked her to go into the building with Officer San Filippo to check for a possible break-in.

Sergeant Mancuso, by then alone, followed defendant and his companion and observed them proceed by taxicab to a social club about five blocks away. As Sergeant Mancuso approached the social club, he further observed an unidentified male about to exit the club. The sergeant testified at the hearing "[h]e saw me and went back inside". Within a few minutes defendant and his companion emerged from the club, carrying the set and antenna, crossed the street and headed in the direction of some abandoned buildings. Sergeant Mancuso intercepted them, identified himself as a police officer and questioned them, asking who they were, where they were coming from, where they lived, whose television set it was and what they were doing with it. Defendant responded that he lived on East 7th Street, that they were coming from his apartment, that it was his set and that they were taking it to be repaired. Moments later, noticing bulges in the clothing of defendant and his companion, Sergeant Mancuso drew his weapon°and frisked the two. The bulge in defendant's pocket turned out to be an electric razor. Sergeant Mancuso also felt a sharp object in defendant's pocket, which he removed—part of a nail clipper that was bent. From the companion's pocket Sergeant Mancuso removed half a tweezer, a nail clipper and some bobby pins on a card. The sergeant asked a passing civilian to call 911 for a radio car.

Meanwhile, at 61 East 7th Street, Officer San Filippo and the superintendent discovered that Apartment 3D had been broken into, that the door was open, and that there were scratches around the lock, indicating that the lock had been picked. Inside, Officer San Filippo noticed the apartment in disarray, and an empty television stand with wires lying nearby.

Responding to the 911 radio call, Officer San Filippo came to Sergeant Mancuso's aid at the place where Sergeant Mancuso had stopped defendant and his companion and informed the sergeant about the break-in. Defendant and his companion were placed under arrest and taken to the precinct where a more thorough search of defendant yielded a metal wire, a bobby pin, a tie clasp, a nail clipper, a spoon containing two picks and a broken metal tweezer. From the companion the search yielded a nut pick, a nail clipper, bobby pins, a nail file and half a tweezer. Also found on one of the suspects was a First National City Bank loan book in the name of Jerry Quinto, the occupant of Apartment 3D.

After *Miranda* warnings by the police, defendant and his companion made inculpatory statements.

When defendant and his companion, fitting the "suspect" profile, emerged from the building carrying the television set and antenna—a building in which the superintendent had remarked that they did not reside—surmise as to the their activity in the building was generated.

Nevertheless, Sergeant Mancuso did not stop defendant and his companion then, but continued to follow the suspects. Any possibility that they were carrying the set for repair was dispelled when they proceeded to the social club five blocks away and upon emerging therefrom headed in the direction of the abandoned buildings with the set. At that point, Sergeant Mancuso had reasonable suspicion that criminal activity was afoot and was entitled to stop defendant and his companion (short of forceable seizure) to gain explanatory information. (See *People v De Bour,* 40 NY2d 210, 216; *People v Rosemond,* 26 NY2d 101, 104, 105; *People v Rivera,* 14 NY2d 441, 444-446; see *People v Mack,* 26 NY2d 311, 314, 316; CPL 140.50.)

Thereafter, when defendant and his companion gave answers to Sergeant Mancuso at variance with his personal observations of their movements prior thereto and also contradictory to the superintendent's statement that defendant and his companion did not live at the East 7th Street address, all the circumstances then known to the sergeant converged to establish probable cause. (*People v Rosemond, supra,* p 105; *Brinegar v United States,* 338 US 160, 175; see *People v Lombardi,* 18 AD2d 177, affd 13 NY2d 1014; see *People v Wheeler,* 61 AD2d 737; see *People v Oden,* 36 NY2d 382, 384; CPL 140.10.)

The factual distinction between *People v Moore* (recently decided by this court [62 AD2d 155]) and this case is marked. In *Moore,* the majority stated (pp 156-157):

"Clearly, the officers had no founded suspicion to believe that the defendant was or had engaged in criminal conduct merely because he was (i) Black, (ii) walking at a quick pace with a limp, (iii) covered with snow, (iv) in a high crime area at night. None of the foregoing factual elements, whether considered alone or in combination, portend criminal activity of any kind.

"Therefore, it must be concluded that the defendant was stopped because the detective saw what 'looked like' the

outline of a television set in his sack. The Court of Appeals has held that the police do not have the right to stop an individual merely because he is carrying a purse *(People v Davis,* 36 NY2d 280). It follows, by analogy and extension, that the police should not be clothed with the authority to stop an individual merely because he is carrying a sack."

Here, there are additional factual elements differentiating this case from *Moore (supra)* such as: (1) The matching of the description of defendant and his companion with that of the "suspect" profile. (2) The easy entrance of defendant and his companion into 61 East 7th Street, although the vestibule door to the premises was locked. (3) The superintendent's statement to the officers that no one who fit the description of defendant and his companion lived at the premises. (4) The superintendent's remark to a bystander, overheard by the officers after defendant and his companion emerged from the premises carrying the television set and antenna, that defendant and his companion did not live there. (5) The brief appearance by the unidentified male about to exit the social club, who "saw" the sergeant and went back inside, shortly after which defendant and his companion left the club with the set and antenna. (6) The direction, towards some abandoned buildings, taken by defendant and his companion after they left the social club with the set and antenna. (7) Defendant's patently untrue response to Sergeant Mancuso's inquiry at that point, while they had the set and antenna, that defendant lived on East 7th Street, that they were coming from his apartment, that the set was his, and that he was taking it for repair. (See *People v Wheeler, supra.)*

The action of Sergeant Mancuso was based on probable cause and not a "hunch".

We find no reason to disturb the judgment of conviction and sentence herein. Accordingly, order of the Supreme Court, New York County (ROTHWAX, J.), entered May 6, 1976, denying defendant's motion to suppress evidence and judgment of the Supreme Court, New York County (ROSENBERGER, J. and a jury), entered July 12, 1976, convicting defendant of burglary in the third degree and sentencing him thereon to an indeterminate term of imprisonment of from two to four years, should be affirmed.

LUPIANO, J. P., EVANS and SANDLER, JJ., concur.

Order, Supreme Court, New York County, entered on May

6, 1976, denying defendant's motion to suppress, and the judgment rendered July 12, 1976, unanimously affirmed.