■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOSE ACEVEDO, IRVING MUNIZ, and ALFREDO SANTOS, Respondents. — Order, Supreme Court, New York County (Gomez, J.), entered December 10, 1979, unanimously reversed, on the law and the facts, the motion to suppress denied, and the case remanded to Supreme Court, New York County, for further proceedings. The three defendants stand charged with burglary in the third degree and possession of burglar's tools. In granting suppression on the grounds of an illegal arrest, the trial court held that "[a]t most there was probable cause to stop and inquire and no more beyond that and that if there was a predicate for police action, it did not exist under the facts of this case". We disagree; the arresting officers' suspicions blossomed into probable cause as the scenario unfolded. (*People v Moore,* 47 NY2d 911, revg on dissenting opn of Justice Silverman 62 AD2d 155, 157 *et seq.*) Two plainclothes officers, patrolling in a gypsy cab, first noticed the three defendants as they were walking slowly on Seaman Avenue. The youths stopped in front of number 125, a six-story apartment building, and looked up and down the block. One of the defendants, Santos, carried a bulky plastic shopping bag slung over his shoulder. Santos and another entered the building while the third youth remained outside. About 15 minutes later, he also entered. Approximately 20 minutes later, the three youths emerged from the building; now, Santos was carrying a beige canvas sack, not theretofore evident. The officers approached, identified themselves and asked the youths where they were coming from. "The minimal intrusion of approaching to request information is permissible when there is some objective credible reason for that interference not necessarily indicative of criminality". (*People v De Bour,* 40 NY2d 210, 223.) The answer was patently false, not identifying the building they had just been observed exiting, but another, located about half a mile away. "The answers to the inquiry afforded solid ground to look

further." (*People v Rosemond,* 26 NY2d 101, 105.) The police were thus duty bound to continue their investigation which included the next logical step, an inquiry as to the bag's contents. Santos answered: "Clothing." One of the officers asked if he could look inside and Santos accommodated him by opening it. This was a completely permissible practice in the circumstances, not differing at all from that described in *People v Moore* (62 AD2d 155, 158, *supra*). The bag's contents included a blue dress vest, not matching the casual clothing worn by any of the three, a box marked "camera" and a knotted rope, which any experienced police officer would recognize as a potential burglar's tool. The investigation culminated in defendant Acevedo's implausible answers concerning his possession and future use of the rope. In a time when dumbwaiters are beyond the memory of most of us, the explanation that the rope was to be given to the superintendent of the building in which his grandmother lived to repair such a device strains credulity past the limit. Thus, the detention further of the three was justified (CPL 140.50, subd 1) and they were returned to the building they had been seen entering, where defendant Acevedo stoutly denied he had been. This concatenation of articulable facts and the rational inferences drawn therefrom provided probable cause at that moment for the arrest. And, though possibly surplusage to the chain of events justifying the arrest, an apartment on the top floor of 125 Seaman Avenue was, on immediate investigation, found to have been broken into and rifled. It should be noted that not a single answer given during the investigative questioning was inculpatory, each constituting an attempt at exculpation. Nothing occurred by way of improper elicitation of answers in violation of *Miranda* (384 US 436). Each question was carefully designed to provide an opportunity for an answer which, as far as the officers knew, might indicate the innocence of the observed conduct. Certainly, after the condition of the top floor apartment had been seen, there was probable cause for arrest, but even if the return to the building of the three be deemed such a restraint as to be an arrest in itself, it is insignificant in light of the fact that it was eminently reasonable, even then, to continue investigative questioning with a last opportunity to explain presence in 125 Seaman Avenue. As it turned out, another set of lies made that impossible, and the "reasonable suspicion that a particular person [had] committed * * * a felony" had ripened into certainty. (*People v Moore,* 62 AD2d 155, 158, *supra.*) Concur — Sullivan, J. P., Carro, Markewich, Lupiano and Bloom, JJ.