■    THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEROY RICHARDSON, also Known as ARNOLD THOMAS, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered September 7, 1973, convicting him of attempted criminal possession of a forged instrument in the second degree, upon his plea of guilty, and imposing sentence. Judgment affirmed. No opinion. Latham, Acting P. J., Christ, Brennan and Munder, JJ., concur; Margett, J., dissents and votes to reverse the judgment, grant the suppression motion, vacate the guilty plea and dismiss the indictment, with the following memorandum: Prior to the entry of defendant's plea of guilty to attempted criminal possession of a forged instrument in the second degree, the trial court denied a motion to suppress certain evidence allegedly obtained in violation of defendant's Fourth Amendment rights. At the suppression hearing testimony was given showing the following facts. Defendant attempted to purchase by check two round-trip, first class tickets to Las Vegas from the Trans World Airlines ticket counter at La Guardia Airport. Upon the ticket agent's request for identification, defendant produced a New York State driver's license in the name of Jeffrey Vogel, the same name that appeared on the check (which had not been filled out). The ticket agent, his suspicions aroused because the driver's license did not have a validation stamp, telephoned the police. He then informed defendant that he could not honor the check and returned both the check and the license. Following this, defendant entered a nearby men's room and three police officers arrived. The ticket agent informed the officers that defendant was in the men's room and pointed him out when he exited therefrom. This was the full extent of the conversation between the officers and the ticket agent. The officers immediately approached defendant and demanded that he produce identification. At this juncture, the testimony of the one police officer who testified and that of defendant is in conflict. The officer testified that defendant voluntarily produced the driver's license and, when asked for further identification, voluntarily produced four other pieces of identification in the name of Jeffrey Vogel. The officer further testified that defendant then admitted he was not Vogel, and was placed under arrest. Defendant, who has a long criminal history, testified that, when asked for identification by the officer, he refused and was shoved against the wall and searched. At the time defendant exited the men's room and identification was demanded of him, he was not free to ignore the three officers and proceed on his way. Hence, in my view, he was seized *(People v Cantor,* 36 NY2d 106, 111–112). This detentive stop can be justified under the Fourth Amendment only if the police reasonably suspected that defendant "has committed or is about to commit either (a) a felony or (b) a class A misdemeanor" (CPL 140.50, as in effect on Jan. 29, 1973, the date of the occurrence). "Reasonable suspicion" has been defined as "the quantum of knowledge sufficient to induce an ordinarily prudent * * * man under the circumstances to believe criminal activity is at hand" *(People v Cantor,*

*supra,* pp 112–113). In order to justify a detentive stop, "the police officer must indicate specific and articulable facts which, along with any logical deductions, reasonably prompted that intrusion"; neither good faith nor vague or unparticularized hunches will suffice *(People v Cantor, supra,* p 113).' Reasonable suspicion may, of course, be based upon an officer's personal observation or upon information supplied by another person *(People v Moore,* 32 NY2d 67, 69, cert den *sub nom. Moore v New York,* 414 US 1011). Where, as here, "an informant's tip is involved, it must carry sufficient indicia of reliability to justify the forcible encounter" *(People v Moore, supra,* p 70). In the instant case, the forcible encounter was predicated solely upon the ticket agent's allegation that defendant had produced an unvalidated driver's license as identification. In addition to the fact that the officers had had no prior dealings with this informant (and made no further inquiry of him), it should be emphasized that the mere production of an unvalidated driver's license for the purpose of *identification* is not criminal. The only reasonable inference, I believe, that can be drawn from the fact that a license is unvalidated is that the holder has not yet paid the required State fee (or does not intend to pay it). It should also be emphasized that we are not dealing here with "exigencies affecting life, limb, or grave property damage" warranting prompt police action; rather, we are involved here with "laws of limited public consequence, such as * * * larcenies of the ordinary kind" not warranting as drastic a response as in the former situations *(People v Taggart,* 20 NY2d 335, 339–340, app dsmd *sub nom. Taggart v New York,* 392 US 667). "It follows that inasmuch as the officers had no initial right to stop defendant and interrogate him the ensuing search (although [allegedly] made with appellant's consent) was fatally infected and the fruits thereof should be suppressed" (bracketed word supplied) *(People v Albright,* 32 AD2d 878; see, also, *People v Rivera,* 14 NY2d 441, 444). Even assuming that reasonable suspicion justifying this stop was present, I am of the view that the People did not sustain their heavy burden of proving a voluntary waiver of defendant's Fourth Amendment rights *(People v Whitehurst,* 25 NY2d 389, 391). It is inconceivable to me that this defendant, who, it should be recalled, is well-versed in the ways of the criminal justice system, would blithely turn over five pieces of false identification to a police officer and then, after having gone through all this trouble, *admit* to the officer that he was not the individual whose name appeared thereon. This court has stated that it will not "credit testimony which has the appearance of having been patently tailored to nullify constitutional objections" *(People v Massiah,* 47 AD2d 931, 932).