■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOHN PLUNKETT, Respondent.—Appeal by the People from an order of the Supreme Court, Kings County, dated June 15, 1976, which, after a hearing, granted defendant's motion to suppress physical evidence. Order reversed, on the law and the facts, motion denied, and case remanded to the Criminal Term for further proceedings consistent herewith. On May 2, 1975, at approximately 9:05 P.M., while about to make a night deposit in a local bank, a store manager was held up at gunpoint. He was relieved of the cloth bag he was carrying. It contained $777 in currency and $250 in checks. The robber dashed into a car parked nearby and fled the scene with his driver. An eyewitness immediately gave chase. He had remained seated in his car while the manager, his fellow employee, alighted to make the deposit. He noted the description of the clothing worn by the hold-up man. He also noted that the "getaway" car was a two-door, grayish-white, rather large vehicle, with dents on the right front side. Unfortunately the pursuer lost the robbers in traffic when they "ran" a red light and went through a stop sign to retard pursuit. The eyewitness then returned to the crime scene. He and the victim separately called the police and gave all relevant data anent the robbery. The information was broadcast on the police radio system. Shortly after the telephone calls were made, and within 30 minutes after the robbery, two uniformed policemen from the adjoining precinct, in a police car, received the intelligence concerning the crime. Almost immediately they observed a vehicle matching the description given over the radio. As indicated in the broadcast, two white males were in the car. And, as noted by one of the policemen at the suppression hearing: "The two occupants of the vehicle turned around simultaneously and looked back at me and my partner in the radio car." The same witness testified that the white car stopped at an intersection for a red light. In response to the question, "What happened then?", the officer answered, "The light changed and they hesitated * * * and then made a left turn." Immediately, the suspect car accelerated and made three consecutive right turns. After the third one the police put on their overhead light. At this moment the driver of the "getaway" car swung it into a driveway, which, as it turned out, happened to be at his mother's home. The police, in hot pursuit, parked nearby. They ordered the two men out of the car and then awaited the arrival of the eyewitness and the victim, both of whom soon appeared. By this time several persons in the neighborhood had clustered at the scene. Nevertheless, Robert Balsamo, the codefendant, was unhesitatingly pointed out as the gunman. He was not then in handcuffs, nor was he segregated from the crowd around him. As to defendant Plunkett, there was no question raised, then or later, that he was not the driver of the car. In our view the police had a well-founded suspicion that criminal activity was afoot (see *People v Cantor,* 36 NY2d 106; *United States v Bugarin-Casas,* 484 F2d 853, cert den 414 US 1136). They had, therefore, the right to make a lawful

detentive stop. They acted not on a hunch as the result of an anonymous tip, as in *People v Johnson* (30 NY2d 929), but on the well-articulated suspicion that Plunkett and Balsamo were the malefactors. Between them, the victim and the eyewitness had given sufficient information to justify the police action in following and arresting the two men. The circumstance that, at no time while under their observation did the pursued car violate a traffic ordinance, is beside the point. The driver would have had to be an utter nincompoop to break the law when he knew that he was being followed by a police car. After the arrest the two men were placed in the police car and a sergeant—who was on the scene—followed in the "getaway" car. Both vehicles were driven to the police station where, after being vouchered in, the impounded car was searched. The search revealed $777 in cash, a revolver and two hats or caps. These are the items that were suppressed at Criminal Term. In *People v Dixon* (52 AD2d 928, determination adhered to upon reargument, 56 AD2d 880 [decided herewith]) a somewhat similar collection of facts impelled a police officer to stop (and frisk) a defendant at a point somewhat remote from the scene of a shooting. The officer made the stop about five hours after the shooting in response to a police radio alarm "advising him to be on the lookout for a 1960 gray Cadillac with front end damage". The frisk revealed a loaded weapon which was later sought to be suppressed. We held that both the initial stop and the search were justified on the reasonable suspicion (as here) that the defendant had committed a crime. In our opinion, the sequence of events at bar amply justified the actions of the two police officers. Cohalan, Damiani and Hawkins, JJ., concur; Hopkins, Acting P. J., dissents and votes to affirm the order.