## (April 27, 1978)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HEZEKIAH BOODLE, Appellant.—Judgment of the Supreme Court, New York County, rendered May 24, 1976, convicting appellant (1) after a jury trial, of criminal possession of a weapon in the third degree and sentencing him to a term of 3½ to 7 years, and (2) upon a plea of guilty of criminal possession of a controlled substance in the seventh degree and sentencing him to a concurrent term of imprisonment for one year affirmed. Two police officers investigating a month-old homicide drove in an unmarked automobile to a street corner where they were hoping to find appellant, who they believed had information concerning a homicide. Both detectives testified that when they located appellant, he was doing nothing to give them reason to suspect he was committing a crime or was, in any way implicated in the homicide. Appellant was called over to the car, and according to the officers, apprised of their interest in speaking to him. He was asked to enter the rear portion of the car and as soon as he was seated, the officers drove the vehicle away because of their reluctance to speak to appellant where they might be seen. Within one-half block from the starting point, the officers observed appellant reach down about his waist and throw a gun through the car window.

The officers stopped their automobile, retrieved the gun and unloaded it. Appellant was then taken to the precinct where he was searched and 13 glassine envelopes, containing a substance later determined to be heroin, were found in his possession. We are in agreement that when appellant entered the automobile and was driven away, he was in custody. This conclusion is supported by the testimony of one of the officers, that he told appellant to put his hands where they could be seen. The initial issue for resolution is whether the weapon was produced by him as a result of unlawful police action. In *People v Cantor* (36 NY2d 106) defendant produced his weapon ostensibly for self-protection when on a city street he was surrounded by a number of men who later for the first time identified themselves to him as police officers. The court ruled there was no justification to stop defendant under the criminal law and concluded that the pistol was "revealed as a direct consequence of the illegal nature of the stop", and accordingly was suppressed *(People v Cantor, supra,* p 114). In *People v Townes* (41 NY2d 97, 101) where defendant on being stopped by the police drew a gun, aimed and attempted to fire at the police, the Court of Appeals observed that "Under the * * * findings of fact it cannot be said that the weapon was revealed as a direct result of the unlawful nature of the police conduct." It distinguished *Townes* from *Cantor* by emphasizing, among other reasons, that in *Townes* "the gun was produced after the officers had clearly identified themselves". Here we find that appellant did not produce the weapon as the direct consequence of the unlawful nature of the stop or as the result of any police action directed to his person. The trial court found, and on this record there is no basis to disagree, that appellant on his own initiative and by his own actions discarded the weapon which he had secreted. "Any 'connection between the lawless conduct of the police and the discovery of the challenged evidence [was] "so attenuated as to dissipate the taint" ' " *(People v Townes, supra,* p 102). Hence, seizure of the weapon by the police was lawful. The seizure of the narcotics likewise was lawful. When the officers saw defendant reach down about his waist and discard the weapon, they were provided with reasonable cause for defendant's further detention. In the circumstances described, the conduct of the police in searching defendant at the police station and finding the narcotics was so attenuated from the initial illegality " ' "as to dissipate the taint" ' " thereof. *(People v Townes, supra,* p 102.) We have examined the other contentions of appellant and find them without merit. Concur—Birns, Markewich and Sullivan, JJ.; Murphy, P. J., and Fein, J., dissent in the following memorandum by Murphy, P. J.: The majority concede that the defendant was unlawfully detained by the police in the unmarked vehicle *(People v Cantor,* 36 NY2d 106, 111). While they find *People v Townes* (41 NY2d 97) to be controlling, I would reverse upon *People v Butterly* (25 NY2d 159) and those subsequent cases in line with it *(People v Smith,* 42 NY2d 961; *People v Allende,* 39 NY2d 474; *People v Pepitone,* 48 AD2d 135, affd 39 NY2d 907). In *Butterly,* the police observed the defendant enter and leave a premises where narcotics were sold. When the defendant drove away in a taxicab, the police followed him in their own vehicle. When the taxicab stopped for a light, the police, displaying their shields, knocked on the right rear window of the cab. Thereupon, in plain view of the police, the defendant placed three capsules on the floor of the cab. These capsules were analyzed to be barbiturates and the defendant was later convicted for unlawfully possessing them. In reversing that conviction, the Court of Appeals found that the hearing court had denied the motion to suppress on an erroneous ground. The court remanded the case for a further hearing to determine whether

the conduct of the officers amounted to an unlawful arrest or was only a routine surveillance of the defendant. It is clear from the *Butterly* decision that, if the hearing court subsequently found that an unlawful arrest had occurred before the capsules were displayed by the defendant, then those capsules should be suppressed. Similarly, in this proceeding, I would suppress the gun because it was only displayed by the defendant and recovered by the police after the defendant had been unlawfully detained. For that same reason, I would suppress the narcotics later found on his person in the precinct. *(People v Cantor, supra,* p 111.) The instant case should be distinguished from *Townes* in one critical respect. The defendant herein attempted to abandon his gun. Townes, however, attempted to fire his weapon at the police. For this reason, the doctrine of attenuation, as set forth in *Townes,* is not operative in this proceeding. Accordingly, I would reverse the judgment of conviction, grant the motion to suppress and dismiss the indictment.