■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARVIN HARRIS, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered February 25, 1976, convicting him of attempted possession of weapons, etc., as a felony, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress evidence. Judgment reversed, on the law and the facts, motion granted, indictment dismissed, and case remitted to the Supreme Court, Kings County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. In our view, defendant's Fourth Amendment rights were violated by the police. Accordingly, defendant's motion to suppress should have been granted and the indictment dismissed. The People's testimony at the suppression hearing was adduced from one detective. He testified that on September 29, 1973 his superior received an anonymous telephone message that members of the Black Liberation Army, a radical group, including two members named Myers and Brown, were at a bar located at 282 Flatbush Avenue. Pursuant to this information, this witness and six other detectives entered the bar with their revolvers drawn and told everybody to freeze. As defendant turned to talk to the detective, the latter told defendant to put his hands on the bar. The detective began to frisk defendant and, as he did so, defendant informed him that he had a gun. The gun and holster were seized. On cross-examination, the detective admitted that he did not know what Myers looked like. He also admitted that no members of the Major Case Squad, which handled radical groups, were present and that no known members of the Black Liberation Army were found in the bar. The defense called another detective, who admitted on redirect that he testified at a preliminary hearing that he knew defendant was neither Brown nor Myers. In *People v Stewart* (41 NY2d 65, 66), the Court of Appeals, in expanding on the principles set forth in *People v De Bour* (40 NY2d 210), stated: "Simply stated the proper analysis in cases of this nature [i.e., searches based upon anonymous telephone tips] is to examine the predicate for the police action and then determine whether or not that predicate justified the extent of the official intrusion on the individual. Thus, the predicate established defines the scope of permissible police conduct." In *Stewart,* the arresting officer received an anonymous tip that a man with a gun, described as a male Negro wearing a long green coat, was in front of a particular premises. The officer went to that location. Defendant approached him and a bulge was observed in his left front trouser pocket. The officer admitted that the bulge could not have been a gun. The officer, nevertheless, reached into the pocket and removed eight bullets. Defendant was then frisked and a gun was found. In holding that the search in *Stewart* was unconstitutional, the Court of Appeals stated (p 69): "In light of the principles articulated in *La Pene* [40 NY2d 210] *(supra)* it is clear that where an anonymous phone tip giving a general description and location of a 'man with a gun' is the sole predicate, it will generate only a belief that criminal activity is afoot *(People v Cantor,* 36 NY2d 106; *People v De Bour, supra).* That type of information will not of itself constitute reasonable suspicion thereby warranting a stop and frisk of anyone who happens to fit that description *(People v La Pene, supra;* CPL 140.50). In that situation, the police have only the common-law power to inquire for purposes of maintaining the *status quo* until additional information can be acquired *(Adams v Williams,* 407 US 143, 145). Thus while Officer Castellano was justified in approaching Stewart, he exceeded his

authority when he felt the cylindrical object in the trouser pocket. As we noted in *De Bour (supra,* p 221), a bulge in the pocket, unlike a waistband bulge, could be caused by any number of innocuous objects. Moreover, the officer conceded that he could not have possibly known from the location and character of the bulge that the defendant was carrying a weapon. On this knowledge the patrolman in *Stewart* would have been justified if he had made a verbal and visual inquiry while taking due precaution for his own safety (see, e.g., *People v De Bour, supra; People v Rosemond,* 26 NY2d 101, 105; *People v Trapier,* 47 AD2d 481; *People v Bronk,* 66 Misc 2d 932, 934, affd 31 NY2d 995). As it was however, the physical intrusion on Stewart's person was not warranted here. Before a police officer 'places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so' *(Sibron v New York,* 392 US 40, 64)." To justify the serious curtailment of a citizen's rights, as occurred here, requires reasonable suspicion that the individual is committing or has committed a crime (see *People v Cantor,* 36 NY2d 106). No such predicate was demonstrated in the case at bar. The police received an anonymous tip that two named individuals, members of the Black Liberation Army, were in a particular bar. Upon entering the bar, they found defendant. However, the detectives conceded that defendant was not acting in a suspicious manner; nor did defendant resemble the two named members of the Black Liberation Army. Under these circumstances, the police may have been justified in making inquiry of the patrons as to the whereabouts of Brown and Myers, but their "seizure" of all of the bar's occupants at gunpoint was not justified. Since the defendant was illegally seized, his subsequent admission during the illegal frisk, that he had a gun, and the weapon itself should have been suppressed (see *People v Stewart, supra; People v Cantor, supra).* Martuscello, J. P., Titone, Rabin and Hawkins, JJ., concur.