■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY CHAPMAN, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Sharpe, J.), rendered September 17, 1982, convicting him of attempted criminal possession of a weapon in the third degree, upon a plea of guilty, and imposing sentence. The appeal brings up for review the denial of the defendant's motion, *inter alia,* to suppress physical evidence. Judgment reversed, on the law and the facts, motion granted, indictment dismissed and case remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. On April 9, 1982, at approximately 9:30 P.M., Police Officer Dominic Vasaturo and two brother officers were on anti-crime patrol in an unmarked car in the vicinity of 217th Street and Hollis Avenue in Queens County, an alleged "robbery prone" location. At that time, as he was driving westbound on Hollis Avenue (a well-lit, residential street), Officer Vasaturo observed a group of several elderly parishioners leaving a local church, and approximately two and one-half blocks thereafter he observed a group of three young men "lingering around" under a tree. After passing the three youths and traveling two blocks further west, the officer made a "U" turn and parked his vehicle on Hollis Avenue, whereupon he placed the young men under observation with the aid of binoculars. From this vantage point, the officer at first observed the three young men talking and looking "up and down" Hollis Avenue, but when an elderly woman walked past their location, approximately 10 minutes later, it appeared to the officer that they "stared" at the woman and then started to follow her at a discrete distance, i.e., approximately 25 feet. At no time, however, did the three youths stop the woman or interfere with her freedom of movement, and when they came to within one-half block of the officer's location, they actually crossed Hollis Avenue heading away from the woman. At this juncture, when the three men had just about reached the opposite curb, Officer Vasaturo drove his vehicle across Hollis Avenue and blocked their path. Upon exiting his vehicle with his brother officers and identifying himself as a policeman, Officer Vasaturo ordered the defendant to remove his right hand from his jacket pocket, and when the latter delayed in so doing, he placed his hand on his service revolver. At this point, the defendant complied with the officer's direction, whereupon the officer observed what appeared to be a bulge in the defendant's pocket, touched its exterior, and detected the outline of a gun. Reaching in, the officer retrieved a loaded .25 caliber automatic. The defendant was thereafter arrested, and upon the denial of his motion, *inter alia,* to suppress this evidence, pleaded guilty to attempted criminal possession of a weapon in the third degree. We reverse. The sum total of the conduct observed by the arresting officer was, at best, equivocal, and, at worst, innocuous, and could in no event be held to constitute the type of specific, articulable facts necessary to sustain the seizure of the defendant and his companions on the evening of April 9, 1982. As the Court of Appeals stated in *People v Cantor* (36 NY2d 106, 112-113): "Before a person may be stopped in a public place a police officer must have reasonable suspicion that such person is committing, has committed, or is about to commit a crime (CPL 140.50). Reasonable suspicion is the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand. (Compare Schwartz, Stop and Frisk: A Case Study in Judicial Control of the Police, 58 J. Crim. L. C. & P. S. 433, 445 with La

Fave, 'Street Encounters' and the Constitution: Terry, Sibron, Peters and Beyond, 67 Mich. L. Rev. 40.70.) To justify such an intrusion, the police officer must indicate specific and articulable facts which, along with any logical deductions, reasonably prompted that intrusion. Vague or unparticularized hunches will not suffice (*Terry* v. *Ohio,* 392 U. S. 1, *supra; Wong Sun* v. *United States,* 371 U. S. 471, 479). Nor will good faith on the part of the police be enough to validate an illegal interference with an individual (e.g., *Terry* v. *Ohio, supra; Henry* v. *United States,* 361 U. S. 98, *supra; Hill* v. *California,* 401 U. S. 797; *Smith* v. *County of Nassau,* 34 N. Y. 2d 18)." Here, the defendant and his companions took absolutely no action against their presumed victim when she walked directly in front of them (and at a time when the undercover officers were over two blocks away), subsequently never got closer than 25 feet to her, made no overt gestures towards her and were actually in the process of moving away from the woman when they were finally seized. In fact, according to the officer's own testimony, at no time did he observe their involvement in anything which he could honestly describe as criminal activity. Notably, neither of the defendant's companions was arrested in connection with this incident. As the evidence in issue was acquired as the direct result of an unlawful seizure, the defendant's motion should have been granted in its entirety and the indictment dismissed. Gulotta, J. P., O'Connor, Bracken and Brown, JJ., concur.