THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LARRY BURTON BENNETT, Appellant.

Third Department, December 24, 1986

APPEARANCES OF COUNSEL

*Franklin B. Resseguie* for appellant.

*Robert J. Simpson, District Attorney (Judith A. Melville* of counsel), for respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

On April 19, 1985, at approximately 1:00 A.M., State Troopers Donald Faughnan and Ronald Bell received a radio communication directing them to investigate a one-car property damage accident possibly involving an intoxicated driver at the intersection of Routes 38 and 38B in the Town of Newark Valley, Tioga County. When they arrived at the scene there was no evidence of an accident. However, they observed two vehicles parked within 100 yards of the intersection. The area where the vehicles were parked was illuminated by a streetlight. When the police approached the parked automobiles in their plainly marked police vehicle, one of the cars drove off and defendant, who had been talking to the driver of the car that departed, walked back to his vehicle and sat in the driver's seat alongside a female passenger. Trooper Faughnan approached defendant on the driver's side and asked if he had

been involved in an accident. Defendant stated that he had not. When asked for his license and registration, defendant replied that the car was not his and that he had no driver's license. Trooper Faughnan then observed a roll of approximately 50 one-inch square plastic bags with ziplock tops in plain view on the dashboard of the car. He also observed, in plain view, a three-inch diameter round black zippered pouch on the center of the dashboard. These items were clearly visible without the use of the flashlight, which the trooper used to determine if there was any physical damage to the vehicle which might have indicated that the car was in the accident that he was investigating.

Trooper Faughnan, now knowing that defendant was driving a car he did not own, without a driver's license and with paraphernalia usually associated with drugs, asked defendant to exit the car and to explain what the plastic bags were. Defendant said that he was a coin collector and that the 50 square plastic bags were coin bags. Next, in response to the trooper's inquiry about the larger black satchel or pouch, defendant reached into the car, pulled out the bag, opened it, and pulled out a baggie that contained a white powder residue. When Trooper Faughnan asked if the bag contained cocaine or speed, defendant said it was speed. Thereupon, Trooper Faughnan advised defendant that he was under arrest and told him to step to the rear of the vehicle. Defendant, as he moved toward the rear of the car, removed a sleeveless sweatshirt that he was wearing and attempted to throw it into the back seat of the car. Trooper Faughnan grabbed the vest and discovered eight plastic bags containing a white powder and two hypodermic needles in the pocket of the vest. A subsequent search of the vehicle by Trooper Bell revealed another bag of white powder and some marihuana. While still at the scene, but after his arrest and after being advised of his *Miranda* rights, defendant stated that everything in the car was his property.

A field test of the contents of the bags was performed at the State Police barracks. They all proved positive for methamphetimine. Defendant never asked to see or call an attorney although afforded the opportunity to do so by Trooper Faughnan at the police barracks.

Defendant was indicted and charged with criminal possession of a controlled substance in the second degree. A suppression hearing was held, after which County Court held that the evidence obtained from the vehicle was lawfully obtained, and

that the voluntary statements made by defendant to Trooper Faughnan gave rise to probable cause for defendant's arrest. County Court also held that the search of defendant's vest and of the vehicle were lawful searches incident to defendant's arrest. Subsequently, defendant pleaded guilty to a reduced charge of criminal possession of a controlled substance in the third degree and received an indeterminate sentence of imprisonment of 5 to 15 years. Defendant appeals.

■ On this appeal, defendant contends that the continued interrogation and detention of him after the police officers knew that no accident had occurred constituted an unconstitutional seizure and that, therefore, the evidence seized and statements obtained should have been suppressed. We disagree.

The inquiries made of defendant by Trooper Faughnan after defendant denied involvement in the reported accident did not amount to unlawful interrogation or detention. On the issue of interrogation, the factual pattern herein is not unlike that in *People v Huffman* (41 NY2d 29), where police officers observed several individuals standing on the rear steps of a delicatessen and, as the officer approached one of the individuals, the defendant went behind some bushes. When the defendant was ordered out and the officers secured their weapons, he responded to police inquiry by saying, "We were trying to break into that store" *(supra,* at p 30). In *Huffman,* the Court of Appeals held that such an admission, although made before preinterrogation warnings, was admissible. The same is true herein. While defendant might be deemed to have been in custody, the single question by Trooper Faughnan concerning the contents of the large plastic bag did not constitute a process of interrogation to which *Miranda v Arizona* (384 US 436) is applicable. The conduct of defendant was highly suspicious and the question was designed to clarify the situation rather than to coerce a statement. In fact, the police were trying to determine if a crime had been committed and defendant's incriminating statement took the officers by surprise. Here, as in *Huffman,* the police encountered suspicious activity and did not anticipate that defendant would voluntarily make an incriminating statement. The evidence was thus properly ruled to be admissible *(see, People v Lowe,* 91 AD2d 1100).

We also hold that defendant's detention was lawful. In the course of the initial questioning concerning a possible acci-

dent, it was revealed by defendant that he was operating a motor vehicle without a license, a violation of the Vehicle and Traffic Law. Thus, it was not only lawful to detain defendant, the officers could not permit him to drive away.

Turning to the issue of whether County Court erred in failing to suppress the evidence seized from defendant's car, we hold that defendant's constitutional rights under either the US Constitution 4th Amendment or the NY Constitution, article I, § 12 were not violated by the manner in which evidence was obtained from defendant's vehicle or person. The law does not require probable cause to exist in every instance where police intrude upon an individual's liberty *(People v Schobert,* 93 AD2d 949). Police are permitted to make investigatory stops and to approach individuals to request information " 'when there is some objective credible reason for that interference not necessarily indicative of criminality' " *(supra,* at p 950, quoting *People v De Bour,* 40 NY2d 210, 223). Here, when defendant was unable to produce a valid driver's license and it was ascertained that the vehicle he was operating was not his own, Trooper Faughnan was justified in ordering defendant to exit his vehicle and to make further inquiries, including a pat-down search, prior to placing him under arrest *(see, People v Ellis,* 62 NY2d 393). In *Ellis,* the Court of Appeals held that when a vehicle is legitimately stopped and the operator is unable to produce a valid driver's license, the police are justified in doing a pat-down search of the driver before taking him to the station to issue a summons. Here, such a search would have inevitably led to the discovery of the eight baggies containing methamphetimine in defendant's vest pocket. Accordingly, since a pat-down search of defendant would have been constitutionally permitted in the instant case, the less intrusive investigatory inquiries made of defendant and which led to the seizure of the illegal drugs were certainly permissible *(see, People v Cantor,* 36 NY2d 106). Once defendant gave incriminating replies to the constitutionally permissible inquiries, defendant's arrest and the seizure of the black satchel constituted a proper search incident to a lawful arrest *(see, People v Belton,* 55 NY2d 49). Thus, all evidence obtained from defendant's vehicle and person was lawfully obtained and County Court's ruling was correct.

■ Lastly, since defendant was sentenced in accordance with a plea bargain which is set forth at length in the record and to which defendant consented while represented by counsel, we reject his challenge to the sentence imposed.

MIKOLL, J. (dissenting). I respectfully dissent. In the instant case, the police had received a radio communication that a one-car property damage accident, possibly involving an intoxicated driver, had occurred at the intersection of Routes 38 and 38B in the Town of Newark Valley, Tioga County. Arriving at the scene some 20 to 25 minutes later, the officers saw no cars in the area nor any sign of an accident. They proceeded one mile up the road and doubled back. On their return to the intersection, they observed two vehicles about 100 yards east of the intersection. One was parked on the shoulder of Route 38B, facing east; the second was parked perpendicular to the first, in the driveway of the Goodrich Farm Implements Store. The area was illuminated by two streetlights. The officers drove behind the car on the shoulder of the road and saw defendant, standing next to this vehicle, conversing with someone therein.

As they pulled up, defendant returned to the parked vehicle in the driveway and entered it on the driver's side. As the trooper approached, the other car drove away. Trooper Ronald Bell pulled up behind defendant's car, thus blocking it. Both officers approached the vehicle on either side. A woman was also seated in the car. The officers, using flashlights, examined the outside of defendant's car and observed no sign of damage. Defendant was asked if he had been in an accident, to which he answered "No." The officers requested his license and registration. He said he had no license and that the car was registered to someone else, his employer. It bore a Pennsylvania registration plate.

One of the officers proceeded to shine his flashlight inside the car. He asked what was on the dashboard, a rolled bundle of small plastic bags. Defendant said he was a coin collector and that the objects were coin bags. The officer later stated that at this point he suspected drug activity because small plastic bags are used by drug dealers.

The same officer also observed some beer canisters in the car but did not know at this point if they were full or empty. He asked defendant what was in the black zippered eyeglass case on the car's dashboard. Defendant said he did not know. The question was asked again. Defendant reached in, got the bag out, unzipped it and showed it to the officer. Inside was a plastic bag containing white powder. The officer then asked, "Okay, what is it, cocaine or speed?" Defendant said he did not know. The question was repeated. Defendant said it was speed. Defendant was placed under arrest and while being led

to the rear of the car, he took off a sleeveless sweater and attempted to put it into the car. The officers seized the sweater and thereafter administered *Miranda* rights to defendant at the back of the car.

A defendant is entitled to protection against unreasonable searches and seizures. This protection extends to cars and their contents *(see, People v Smith,* 42 NY2d 961, 962).

This case is unlike *People v Huffman* (41 NY2d 29) cited by the majority to justify the stop and interrogation of defendant. In *Huffman,* the Court of Appeals concluded that a single question propounded to the defendant by the police did not constitute a process of interrogation to which *Miranda* was applicable *(supra,* at p 34). In the instant case, the interrogation was far more extensive and intrusive than in *Huffman.*

The People contend that they were suspicious that defendant was involved in a car accident. Nothing they perceived or learned justified this conclusion. Defendant was not at the scene when the police arrived. Moreover, defendant's denial was further confirmed by the absence of any damage on the car. Having failed to substantiate their inquiry as to the accident, the officers had no reason to pursue further inquiry.

Nor can the People legitimize their inquiries by relying on an unlicensed driving violation. The police did not perceive defendant driving. Defendant's car was off the public highway. There was no evidence that it was running. The police had no information available to them that would dictate the conclusion that defendant had driven to the scene. Any number of scenarios was possible other than that defendant drove there.

It is fair to conclude, and the majority so agrees, that defendant was under police custody once the car's exit was blocked *(see, People v Cantor,* 36 NY2d 106, 111) and certainly a warrantless search was underway when the police commenced looking into the car's interior with the use of flashlights *(see, People v Smith, supra).* Outside of an undefined hunch, the police had no reason to intrude into the car. Defendant's activity was innocuous and the officers should have let him proceed. There was no entitlement to question him further *(see, People v Donello,* 103 AD2d 781, 783). Defendant exited the car on police order. He also answered a series of questions and surrendered a black bag to the police. His answers were all the result of acquiescence to police authority. Hence, they were involuntary and coerced and should have been suppressed.

The People, if they wished to pursue the unlicensed driving charge or if they wished to follow their "drug hunch", were required in either event to afford defendant his *Miranda* rights. The failure to do so also requires suppression of all statements made. Accordingly, the judgment should be reversed.

MAIN, WEISS and HARVEY, JJ., concur with MAHONEY, P. J.; MIKOLL, J., dissents and votes to reverse in an opinion.

Judgment affirmed.