■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE IRIZARRY, Appellant. [609 NYS2d 235] —Judgment of the Supreme Court, Bronx County (David Stadtmauer, J.), rendered July 14, 1992, which convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the third degree and sentenced him to a term of ten weeks, to run concurrently with a term of probation of five years, is affirmed.

The testimony at the *Mapp* hearing established that an informant told the police the defendant had been in a fight with the homicide victim two hours before the latter's murder. This informant, who saw the fight and knew the defendant by his first name, gave the police a description of the defendant, the type of car he drove and where he could be found. These facts alone warranted the police approach to defendant to request information concerning his knowledge of the homicide. Whether defendant was considered a suspect or a witness at that time would make no difference.

In either event, the police were justified in following defendant when he drove away from the bar, in an attempt to question him without the knowledge of others who might be in the bar or immediate vicinity. Thereafter, the fact that defendant drove around the same block twice in a reckless and erratic manner, coming to a screeching halt and quickly opening the car door, gave the police grounds for fearing for their safety and for ensuring that defendant was unarmed before they questioned him.

The minimal intrusion of asking defendant to step outside and place his hands on the car roof was justified by the rapidly escalating situation. When defendant thereafter almost immediately dropped the gun from his waistband, the police had probable cause to arrest him.

Whatever the legal significance of the informant's tip to the police, that tip did not stand alone at the time the officers requested defendant to leave the car and place his hands on its roof. In *People v Benjamin* (51 NY2d 267), a police officer responded to a radio run of men with guns at a specific location. Benjamin stepped backwards towards the curb, reaching beneath his jacket to the rear of his waistband. The officer immediately ordered him to keep his hands in view,

patted him down and found a loaded weapon. The Court of Appeals noted that although the radioed tip may have had almost no legal significance standing alone, in conjunction with other supportive facts, it might collectively "support a reasonable suspicion justifying intrusive police action", that such additional support can "be provided by factors rapidly developing or observed at the scene", and that an officer cannot be precluded from noting a possible threat to his life *(supra,* at 270).

Defendant Irizarry had been in a bar for at least three and a half hours in that early morning period. Circling a block twice in a reckless, erratic manner, and coming to a "screeching halt" where he had been originally parked, is not the measured conduct of a man into whose hands the police should have to put their safety. The officers had a duty they had to perform and were justified in recognizing the threat to their lives involved in performing it *(supra,* at 271; *see also, People v Allen,* 73 NY2d 378; *People v Salaman,* 71 NY2d 869; *People v Woods,* 64 NY2d 736).

The police did not order defendant to stop the car or to pull over. Indeed, they did not even turn on any flashing lights or siren. Only after defendant brought the car to a screeching halt and himself opened the car door did the police ask him to step outside and put his hands on the vehicle. This was the full extent of any "restraint" placed upon defendant before the police saw the gun, and physically seized him. "The present case presents a situation wherein the level of police intrusion was an appropriate response to the observations and beliefs of the officers involved" *(People v Leung,* 68 NY2d 734, 736). Concur—Wallach, Asch and Nardelli, JJ.

Carro, J. P., and Williams, J., dissent in a memorandum by Williams, J., as follows: The initial level of police intrusion here—seizure of the person—was unwarranted, and, unlawful. As a consequence, the resulting seizure of physical evidence was also unlawful. The totality of the circumstances: that defendant was a possible witness, not a suspect, to a homicide that occurred several days earlier; that he drove erratically after spending at least three hours in a bar, then parked and opened his car door; and that these events occurred at approximately 4:30 A.M., did not amount to a situation where defendant had to be ordered to exit his car and to place his hands on the hood, without prior inquiry.*

---

* A police report prepared by Detective Benedict on the night of arrest,

"Whenever an individual is physically or constructively detained by virtue of a significant interruption of his liberty of movement as a result of police action, that individual has been seized within the meaning of the Fourth Amendment * * * This is true whether a person submits to the authority of the badge or whether he succumbs to force." *(People v Cantor,* 36 NY2d 106, 111, citing *Terry v Ohio,* 392 US 1.)

The New York Court of Appeals ruled in *People v Martinez* (80 NY2d 444, 447) that the applicable standard for seizure of the person, short of arrest, is "reasonable suspicion that a crime has been, is being, or is about to be committed". "Reasonable suspicion" is defined as "that 'quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand.' " *(People v Martinez, supra,* at 448, quoting *People v Cantor,* 36 NY2d 106, 112-113, *supra.)* At no point in the hearing record did the People allege that prior to approaching defendant, they had reasonable suspicion that he had committed or was about to commit a crime.

While it is true that defendant had arguably committed a traffic infraction, he was never questioned about or charged with one. If defendant was indeed approached due to his commission of a traffic infraction, however, then at most, the initial allowable intrusion under these circumstances would have been to ask the defendant to step out of the car for a brief time in order to discuss his traffic infraction *(People v Robinson,* 74 NY2d 773, 775, *cert denied* 493 US 966). If he was being approached as a potential witness in the homicide investigation, a lesser degree of intrusion would have been appropriate. Here the police officers, without justification, far exceeded such minimal levels of intrusion.

It being the case that the police acted unlawfully in initially seizing the defendant, the hearing court's judgment should be reversed, the motion to suppress physical evidence granted, and the indictment dismissed.

---

but submitted in evidence by the defense, stated that the gun was recovered when defendant was *frisked* after being ordered out of his car.