OPINION OF THE COURT
Anne G. Feldman, J.
Defendant moves to suppress physical evidence which he claims was recovered in an unlawful seizure.
After a Mapp/Dunaway hearing at which the only witness was the arresting officer, the court grants the motion to suppress a handgun and marihuana as the fruits of an unlawful seizure.
FACTS
The facts in this case are undisputed. On August 8, 1993, at approximately 7:18 p.m., while on routine motor patrol" in the vicinity of Butler and Hoyt Streets, Police Officer McCroaty observed defendant talking briefly with a man he recognized as someone he had previously arrested for a drug sale. When defendant left this man, riding his bicycle on the Butler Street sidewalk, McCroaty followed driving approximately 5 to 10 *84 miles per hour and maintaining a distance from defendant of approximately 20 to 50 feet.
McCroaty testified that as he drove he noticed defendant was wearing a black pouch on the back side of his waist. When defendant rounded the corner onto Smith Street the patrol car continued to follow him, traveling against one-way traffic. As he rode down Smith Street defendant looked back at the patrol car and at the corner turned onto Douglass Street. McCroaty continued to follow him, driving at the same rate of speed against the traffic flow. Defendant looked back again and moved his waist pouch, which McCroaty testified appeared "heavy”, to the front of his body. McCroaty then accelerated the car and pulled abreast of defendant who reached into the pouch and threw a handgun to the ground. McCroaty recovered the weapon while the other officers apprehended the defendant. McCroaty joined them and recovered marihuana from defendant’s pouch.
LEGAL ANALYSIS
The Fourth Amendment of the US Constitution cloaks a citizen with the right to be secure against unreasonable searches and seizures. Accordingly, society’s interest in preventing and detecting crime must be balanced with an individual’s right to be left alone. "In evaluating the police action [a court] must consider whether or not it was justified in its inception and whether or not it was reasonably related in scope to the circumstances which rendered its initiation permissible.” (People v De Bour, 40 NY2d 210, 222.) Thus, the same circumstances that make it permissible for the police to stop an individual to request information do not permit them to pursue that citizen if he refuses to stop, absent a reasonable suspicion that he has committed or was about to commit a crime (People v Howard, 50 NY2d 583, cert denied 449 US 1023; People v Leung, 68 NY2d 734). "Reasonable suspicion is the quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand.” (People v Cantor, 36 NY2d 106, 112-113.)
In the instant case no objective evidence existed to suspect defendant of committing any crime. Defendant’s behavior in talking with an individual who Officer McCroaty recognized as a suspected drug seller was susceptible to innocent interpretation. Indeed, the prosecution presented no evidence that defen *85 dant’s partner in conversation was selling drugs at the time or had ever been convicted of any drug sale. The riding of a bicycle and the wearing or adjustment of a heavy waist pouch did not elevate defendant’s conduct to a suspicious level. "[I]nnocuous behavior alone will not generate a founded or reasonable suspicion that a crime is at hand.” (People v De Bour, supra, at 216.)
When defendant rode off on his bicycle he was initially unaware that the police were following him. The police could have continued their observation of him provided they did so "unobtrusively” and did "not limit defendant’s freedom of movement by so doing” (People v Howard, supra, at 592; People v Young, 55 NY2d 419, 423). Shadowing him for a few blocks without attracting his attention would have been permissible; however, once defendant turned onto Smith Street and noticed the patrol car following him, driving against traffic, the intrusive nature of the police conduct rose significantly. No longer was the police presence benign, routine or "unobtrusive”. It now represented an intimidating presence and an unsettling show of authority, even without the use of turret lights or siren.
This type of police conduct is equivalent to unauthorized pursuit. Nothing had alerted the police to a crime or elevated their suspicion of defendant beyond a hunch. Their conduct could only have been intended to harass defendant. Officer McCroaty’s subsequent acceleration of the patrol car based on his opinion regarding the weight of the pouch was unwarranted. Its intent was either to further intimidate defendant or was in preparation for apprehending him. "Street encounters between the patrolman and the average citizen bring into play the most subtle aspects of our constitutional guarantees. While the police should be accorded great latitude in dealing with those situations with which they are confronted it should not be at the expense of our most cherished and fundamental rights. To tolerate an abuse of the power to seize or arrest would be to abandon the law-abiding citizen to the police officer’s whim or caprice — and this we must not do.” (People v Cantor, supra, at 112.)
Having determined that the police conduct on Douglass Street was equivalent to pursuit, suppression of the weapon and drugs as evidence must be granted unless the prosecution shows that defendant’s relinquishment of the weapon was a calculated action rather than a spontaneous one. Voluntary relinquishment of contraband in a police officer’s presence *86 amounts to a waiver of Fourth Amendment claims (People v Howard, supra, at 593). "There is a presumption against the waiver of [such] constitutional rights. It is [thus] the People’s burden to overcome th[is] presumption by evidence of an 'intentional relinquishment or abandonment of a known right or privilege’ ” (supra).
This court concludes that the People failed to meet this burden. Defendant’s discarding of the weapon by virtually tossing it to the police was in response to the proximity of the patrol car. His conduct was not "an independent act involving a calculated risk” but rather provoked by "a spontaneous reaction to a sudden and unexpected confrontation with the police” (People v Boodle, 47 NY2d 398, 404). Defendant’s stupidity in throwing away contraband in this manner demonstrates that he acted in panic and did not purposefully divest himself of possession of the gun (People v Howard, supra, at 593). Therefore defendant did not voluntarily abandon the weapon.
Accordingly, defendant’s motion to suppress both the weapon and the marihuana are granted.