■  In the Matter of MATEO F., a Person Alleged to be a Juvenile Delinquent, Appellant. [945 NYS2d 372]—

In a juvenile delinquency proceeding pursuant to Family Court Act article 3, Mateo F. appeals from an order of disposition of the Family Court, Kings County (Calabrese, J.), dated November 16, 2010, which, upon a fact-finding order of the same court dated September 17, 2010, made after a hearing, finding that he committed an act constituting unlawful possession of weapons by persons under 16 and an act which, if committed by an adult, would have constituted the crime of criminal possession of a weapon in the fourth degree, adjudged him to be a juvenile delinquent and placed him in the custody of the New York State Office of Children and Family Services for a period of 12 months. The appeal from the order of disposition brings up for review the fact-finding order and the denial, after a hearing, of the appellant's motion to suppress physical evidence.

Ordered that the appeal from so much of the order of disposition as placed the appellant in the custody of the New York State Office of Children and Family Services for a period of 12 months is dismissed as academic, without costs or disbursements, as the period of placement has expired; and it is further,

Ordered that the order of disposition is affirmed insofar as reviewed, without costs or disbursements.

The testimony at the suppression hearing established that, on an evening in April 2010, the arresting officer and his partner were on patrol in an unmarked vehicle and observed the appellant on a city street wearing a backpack and clothing of a color and style typically worn by youths associated with a gang. The appellant was walking with another youth, who was observed to have a bulge in a left front pocket. The two officers, who were in uniform, alighted from their vehicle and walked behind the two youths. When the arresting officer was within five feet of the appellant, he observed a portion of what appeared to be the curved end of a black handle of a knife protruding from an open-ended compartment which ran the length of the bottom of the backpack. When the arresting officer testified, the handle was measured in court and determined to be one inch thick, and the length of the protruding portion of the handle was determined to be more than 2½ inches. The arresting officer testified that he was very familiar with this type of backpack and had made many arrests for knives carried in this type of bag. After telling the appellant to stop and place his hands on a wall, the arresting officer placed his left hand on the appellant's upper back or shoulder to ensure that the appellant did not move, while the arresting officer pulled the knife from the backpack with his right hand. The knife was 13 inches long with an 8-inch blade.

The sole contention raised by the appellant on appeal is that the Family Court erred in denying his motion to suppress the knife. Contrary to this contention, on the record presented, the police officers acted reasonably at all times (see People v Brannon, 16 NY3d 596, 600-601 [2011]; People v Herrera, 76 AD3d 891, 893 [2010], affd 16 NY3d 881 [2011]) and, consequently, suppression was not warranted.

While we agree with our dissenting colleague that the level of the intrusion here required a reasonable suspicion that the appellant was committing a crime (see generally People v De Bour, 40 NY2d 210, 223 [1976]), we disagree with her view that the arresting officer did not have sufficient knowledge of facts giving rise to a reasonable suspicion that the appellant possessed an illegal or "dangerous knife" (Penal Law § 265.01 [2]) under circumstances indicating that the appellant considered it to be a weapon rather than a kitchen knife or other utilitarian article (see Matter of Jamie D., 59 NY2d 589, 593 [1983]; Matter of Michael Grudge M., 80 AD3d 614, 615 [2011]).

As established by a courtroom demonstration of the manner

in which the knife was positioned when the arresting officer first observed it, the officer reasonably inferred from the size and shape of the handle, and the portion that protruded from the compartment, that the handle was part of a large knife with a long blade. This demonstration and the testimony also established, as the Family Court found, that the knife was "easily accessible" to the appellant. The knife was in a pocket of the backpack facing the appellant's lower back, which the officer described as a "secret compartment" running the length of the backpack in the "lower back area," with "an entrance and exit to both sides." The appellant was wearing the backpack with both shoulder straps, and when so worn, the handle of the knife could be grabbed and the knife easily extracted from the open-ended compartment in the lower back. These observations, coupled with the arresting officer's knowledge of the types and colors of clothing worn by members of a certain gang, and his personal experience making arrests in that location for the possession of illegal knives carried in this particular type of backpack, gave the officer reasonable suspicion to believe that the appellant was carrying a dangerous knife.

Accordingly, the Family Court properly denied the appellant's motion to suppress physical evidence. Angiolillo, J.P., Balkin, and Dickerson, JJ., concur.

Hall, J., concurs in part and dissents in part, and votes to dismiss the appeal from so much of the order of disposition as placed the appellant in the custody of the New York State Office of Children and Family Services for a period of 12 months, reverse the order of disposition insofar as reviewed, vacate the fact-finding order, and grant the motion to suppress physical evidence, with the following memorandum: I respectfully dissent from the conclusion reached by the majority because, in my view, the testimony at the suppression hearing did not demonstrate that the arresting officer had reasonable suspicion to believe that the object protruding out of the appellant's backpack was an illegal knife.

As the arresting officer and his partner were patrolling the Sunset Park area of Brooklyn on April 28, 2010, at about 7:45 P.M., they observed the appellant dressed in "green and black," which, according to the arresting officer, were common gang colors. Specifically, the arresting officer testified that the appellant's jeans were black and his shirt was green. The arresting officer also observed "a handle, that possible [sic] could be a knife," protruding from the appellant's backpack. Without asking any questions, the arresting officer and his partner approached the appellant and his companion, and told them to

stop and put their hands against the wall. The arresting officer then immediately grabbed the handle and removed the knife from the appellant's backpack.

Before a police officer may stop and frisk a person in a public place, the officer must have "reasonable suspicion" that such person is committing, has committed, or is about to commit a crime (*People v De Bour*, 40 NY2d 210, 223 [1976]). Reasonable suspicion has been defined as "the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand" (*People v Cantor*, 36 NY2d 106, 112-113 [1975]). The Court of Appeals has recognized that reasonable suspicion "may not rest on equivocal or 'innocuous behavior' that is susceptible of an innocent as well as a culpable interpretation" (*People v Brannon*, 16 NY3d 596, 602 [2011], quoting *People v Carrasquillo*, 54 NY2d 248, 252 [1981] [internal quotation marks omitted]).

The Penal Law does not criminalize the possession of all knives (*see People v Jose F.*, 60 AD2d 918 [1978]). Indeed, the appellant was ultimately adjudged to be a juvenile delinquent based upon his possession of a "dangerous knife" under Penal Law § 265.01 (2) and § 265.05. "A knife may be considered a 'dangerous knife' within the meaning of Penal Law § 265.01 (2) when the circumstances of its possession demonstrate that the possessor considered it a weapon, even if the knife might not otherwise be deemed a 'dangerous knife' by reason of its inherent characteristics" (*Matter of Michael Grudge M.*, 80 AD3d 614, 615 [2011]; *see Matter of Jamie D.*, 59 NY2d 589, 593 [1983]).

In my view, the arresting officer's testimony did not establish that he had knowledge of facts from which he could reasonably believe that the appellant considered the object protruding out of his backpack to be a weapon. The appellant and his companion were not engaged in any suspicious activity. Further, the arresting officer did not ask any questions to ascertain if the object was in fact a knife and, if so, what kind of knife it was. There was no testimony that the arresting officer believed that the appellant was carrying an illegal or dangerous knife. Rather, the arresting officer testified, in essence, that he thought the handle protruding out of the appellant's backpack was the handle of a knife, and that he made many arrests involving knives and the appellant's type of backpack at that location. There was no testimony that the arresting officer believed that the knife was a dangerous knife, as opposed to one used for a legal purpose.

In *People v Brannon* (16 NY3d 596 [2011]), the Court of Appeals addressed the issue of whether the police had reasonable

suspicion to believe that the defendant was carrying a gravity knife. With respect to the defendant in *Brannon*, the detaining officer testified that he saw a "hinged top of a closed knife" and observed the outline of a pocketknife in the defendant's pocket (*id.* at 602). However, the officer was unable to testify that he suspected or believed the knife to be a gravity knife (*id.*) Therefore, the Court of Appeals concluded that the officer's testimony, as a matter of law, did not support the conclusion that he had a reasonable suspicion that the knife in the defendant's pocket was unlawful (*id.*).

While the appellant in this case was not charged with criminal possession of a gravity knife, the analysis in *Brannon* applies in determining whether the police had reasonable suspicion to believe that the appellant was carrying a dangerous knife. As in *Brannon*, the arresting officer here did not testify that he suspected or believed that the knife he thought the appellant possessed was a dangerous knife. Indeed, the record of the suppression hearing does not support the conclusion that the arresting officer had knowledge of "specific and articulable facts" from which he could infer that the appellant was carrying a dangerous knife (*id.* at 605 [internal quotation marks omitted]).

In my view, under the circumstances of this case, the presentment agency failed to demonstrate that the arresting officer had reasonable suspicion to believe that the appellant was in possession of a dangerous knife, as opposed to any other, lawful knife. Accordingly, I find that the Family Court improperly denied the appellant's motion to suppress physical evidence, and vote to reverse the order of disposition insofar as reviewed, vacate the fact-finding order, and grant the motion to suppress the knife.